460 S.E.2d 1

**CANNELTON INDUSTRIES, INC.,**
Plaintiff Below, Appellant

v.

**The AETNA CASUALTY & SURETY
COMPANY OF AMERICA, et al.,**
Defendants Below, Appellees.

No. 22015.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 8, 1994.

Gale R. Lea, John L. McClaugherty, W. Warren Upton, Jackson & Kelly, Charleston, for appellant.

188

Charles W. Browning, Detroit, MI, Michele Grinberg, Flaherty, Sensabaugh & Bonasso, Charleston, for appellee Aetna Cas. & Sur. Co. of America.

Andrew S. Zettle, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, Stephen M. Kelley, Detroit, MI, for appellees St. Paul Fire and Marine Ins. Co. and St. Paul Surplus Lines Ins. Co.

Chauncey H. Browning, Jr., Charleston, for appellee Affiliated–FM Ins. Co.

James R. Sheatsley, Gorman & Sheatsley & Co., Beckley, John G. McAndrews, Olympia Daskalakis, Mendes & Mount, New York City, for appellee Lloyd's of London.

CLECKLEY, Justice:

This appeal is brought from a final order entered September 28, 1993, in the Circuit Court of Kanawha County, which dismissed a declaratory judgment action brought by Cannelton Industries, Inc. (Cannelton), the plaintiff below and appellant herein. On July 1, 1992, Cannelton initiated the declaratory judgment action in the circuit court against approximately 56 insurance companies alleging breaches of contracts.[1] The circuit court found that all the defendants filing answers by February 1, 1993, except the West Virginia Insurance Guaranty Association (WVIGA), concurred or joined in a motion to dismiss Cannelton's action based upon the doctrine of *forum non conveniens*. On appeal, Cannelton requests this Court to reverse the final order of the circuit court and remand the case to allow further proceedings on the action.[2]

## I.

## ADDITIONAL ACTIONS

Several other actions were filed outside of West Virginia by some of the defendants.

---

1. Two of the briefs submitted in this case claim there are 56 defendants, one of the briefs asserts there are 57, and the September 28, 1993, order of the circuit court states there are 54. The defendants listed by this Court are The Aetna Casualty & Surety Company of America; Aetna Casualty Company of Canada, now known as Laurentian P & C Insurance Company; Affiliated–FM Insurance Company; Allianz International Insurance Company Limited; Allstate Insurance Company of Canada; American Home Assurance Company; Ancon Insurance Company (U.K.) Limited; Assicurazioni Generali, Di Trieste E. Venezia; Atlanta International Insurance Company, formerly known as Drake Insurance Company of New York; Bermuda Fire & Marine Insurance Company Ltd.; Bituminous Casualty Corporation; British National Life Insurance Society Limited, now known as British National Insurance Company Limited; Bryanston Insurance Company Limited; The Canadian Indemnity Company, now known as Dominion of Canada General Insurance Company; CNA Reinsurance of London Limited; Commercial Union Insurance Company; Compagnie d'Assurances Maritimes Aeriennes & Terrestres Societe Anonyme (C.A.M.A.T.); Compagnie Europeenne D'Assurances Industrielles S.A.; Continental Insurance Company; Dart Insurance Company Limited; The Dominion Insurance Company Limited; First State Insurance Company; Folksam International Insurance Company (U.K.) Limited; Gerling Global General Insurance Company; Agencies Limited; Kansa General Insurance Company, now known as Kansa General International Insurance Company, Ltd.; Lexington Insurance Company; Lloyd's Syndicate No. 56; Lloyd's Syndicate No. 109; Lloyd's Syndicate No. 210; Lloyd's Syndicate No. 219; Lloyd's Syndicate No. 278; Lloyd's Syndicate No. 279; Lloyd's Syndicate No. 342, Lloyd's Syndicate No. 474, Lloyd's Syndicate No. 553; Lloyd's Syndicate No. 618; Lloyd's Syndicate No. 918; Lloyd's Syndicate No. 948; Lloyd's Syndicate No. 989; Louisville Insurance Company Limited; Ludgate Insurance Company Limited; New Hampshire Insurance Company; St. Katherine Insurance Company Limited; St. Paul Fire & Marine Insurance Company; St. Paul Surplus Lines Insurance Company; Sovereign Marine & General Insurance Company Limited; Sovereign Marine & General Insurance Company Ltd. H.D.N. A/C; Sovereign Marine and General Insurance Co. Ltd. "C" A/C; Storebrand Insurance Company (UK) Limited; Stronghold Insurance Company; Scottish & York Insurance Company Limited; Taisho Marine & Fire Insurance Company (UK) Limited; Tokio Marine & Fire Insurance Company (UK) Limited; Turegum Insurance Company; Walbrook Insurance Company Limited; West Virginia Insurance Guaranty Association; and "Winterthur" Swiss Insurance Company.

2. In addition to the defendants' motion to dismiss the action for *forum non conveniens*, various other motions were filed by some of the defendants. For instance, the WVIGA filed a separate motion to dismiss the action against it. On September 28, 1993, the circuit court dismissed the action against the WVIGA with prejudice stating "Cannelton's claims were filed late and are not, therefore, **covered claims**[.]" (Emphasis original). (For a discussion of this issue, see *Cannel-*

On May 15, 1992, a month and a half prior to Cannelton's instituting its action in Kanawha County, Commercial Union filed suit in the United States District Court for the Western District of Michigan. On July 13, 1992, St. Paul Fire and Marine Insurance Company and St. Paul Surplus Lines Insurance Company (collectively, St. Paul) also filed an action in the United States District Court for the Western District of Michigan. By order dated August 3, 1993, the district court stayed these cases pending resolution of the action in West Virginia.[3]

In September, 1993, St. Paul voluntarily had its case dismissed, without prejudice, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. Then, on September 27, 1993, St. Paul filed another action in the Circuit Court of Chippewa County, Michigan, against Cannelton; Algoma Steel Corporation, Limited, n/k/a 108668 Ontario, Ltd. (Algoma); the Michigan Property and Casualty Guaranty Association (MPCGA); Doe

Insurers 1 through 100; and all the defendants in West Virginia, except the WVIGA and certain insolvent London Market insurers. On November 18, 1993, Commercial Union amended its complaint in the district court to include all the defendants in West Virginia and the Doe Insurers.[4] Thereafter, by order dated December 16, 1993, this Court directed the defendants not to file any additional actions against Cannelton or Algoma in any other courts.[5]

## II.

## FACTS

Cannelton is incorporated in West Virginia and has its principal place of business in Charleston, West Virginia. Cannelton states that its primary business and activities involve coal mining. According to the briefs, Cannelton's predecessor corporation is Cannelton Holding Company. Until March of

---

ton Industries, Inc. v. The Aetna Casualty & Surety Company of America, 194 W.Va. 203, 460 S.E.2d 18 (1994)). According to Cannelton's brief, four other defendants filed motions under Rule 12(b) of the West Virginia Rules of Civil Procedure. Two of the Canadian defendants, Aetna Casualty Company of Canada n/k/a Laurentian P & C Insurance Company (Laurentian) and The Canadian Indemnity Company, n/k/a Dominion of Canada General Insurance Company (Dominion), filed motions under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure. Dominion also added that it was not subject to service of process under W.Va.Code, 33-4-13 (1992), and that the circuit court lacked venue. Commercial Union Insurance Company (Commercial Union) moved to dismiss the action for improper venue under Rule 12(b)(3) of the West Virginia Rules of Civil Procedure and under W.Va.Code, 56-1-1 (1986). Several of the defendants challenged whether they were subject to venue in the circuit court.

Cannelton states it also filed motions. One of its motions was made pursuant to Rule 55 of the West Virginia Rules of Civil Procedure where it alleged Gerling Global General Insurance Company (Gerling) failed to timely appear in the action, and, therefore, Cannelton sought a default judgment against it. Gerling responded to the motion by filing a motion pursuant to W.Va. Code, 33-4-13, and Rule 12(b) of the West Virginia Rules of Civil Procedure to set aside service of process and dismiss the action for lack of personal jurisdiction and improper venue. Other motions filed by Cannelton were made pursuant to W.Va.Code, 33-4-13(c)(1), and concerned

the posting of pre-answer securities by several of the defendants.

Cannelton argues the circuit court erred by not addressing these motions prior to determining the motion on *forum non conveniens.* Cannelton complains that these defendants may be subject to jurisdiction in West Virginia, but not subject to jurisdiction in Michigan. Therefore, Cannelton asserts that Michigan cannot be an alternative forum. However, even if the circuit court would have determined that venue and jurisdiction were proper in West Virginia for the complaining defendants, it would not change the circuit court's decision to dismiss the action on the basis of *forum non conveniens.* The real issue is whether Michigan will determine if venue and jurisdiction are proper for the complaining defendants.' Cannelton admits that some of the Canadian defendants are willing to waive personal jurisdiction issues in Michigan. However, Cannelton asserts Gerling and Laurentian are not. For the reasons stated in this opinion affirming the circuit court's order to dismiss the action, we believe at this point it is better to permit Michigan to resolve its own personal jurisdiction issues.

**3.** Gerling instituted an action in Canada on February 8, 1993; however, on September 20, 1994, this action was dismissed for delay by the Court of Appeal for Ontario.

**4.** Various motions were made to realign the parties in the district court action.

**5.** The Chippewa County Circuit Court *sua sponte* stayed the action before it.

1991, Cannelton Holding Company was a wholly owned subsidiary of Algoma. Algoma is a limited liability company organized in Ontario, Canada, and has its principal place of business in Sault Sainte Marie, Ontario, Canada. In March of 1991, Algoma sold Cannelton Holding Company to AMAX Coal Industries, Inc., which is a subsidiary of AMAX Energy, Inc., which, in turn, was a subsidiary of AMAX, Inc. By virtue of a merger in 1993, AMAX, Inc., became Cyprus Amax Minerals Company, Inc. The name subsequently was changed to Cyprus Amax Coal Industries, Inc.[6]

Cannelton asserts that on June 9, 1964, it acquired title to property in Sault Sainte Marie, Michigan, where Northwestern Leather Company operated a tannery from 1900 to 1958. Cannelton claims it never conducted any operations on the property. However, the United States Environmental Protection Agency (USEPA) and the Michigan Department of Natural Resources (MDNR) seek to hold Cannelton, as the present owner of the property, liable for the clean-up of hazardous waste allegedly left on the property by the tannery. Cannelton states that the USEPA estimated Cannelton's liability to be $19.7 million, but its liability could reach $51.5 million or more.

Cannelton alleges that each of the defendants sold insurance policies either to it or to its former parent, Algoma. All the defendants have denied coverage of the claims made by the USEPA and the MDNR. As a result, on July 1, 1992, Cannelton filed a declaratory judgment action in the circuit court against the defendants to require them to defend and/or indemnify it against the claims of the USEPA and MDNR.

Cannelton maintains all the policies were arranged through brokers in West Virginia, Canada, and England, and none of the policies were issued or delivered in Michigan. According to Cannelton, its broker from the 1940s until the late 1970s was Flat Top Insurance Agency located in Bluefield, West Virginia. In approximately 1978, McDonough–Caperton–Shepherd–Goldsmith, n/k/a

McDonough Caperton Insurance Group, which is located in Charleston, West Virginia, became Cannelton's broker. At the end of 1978, Cannelton placed its account with Marsh & McLennan Limited which had an office in Toronto, Canada, and an office in Charleston. Cannelton states that representatives from the Toronto office traveled to Charleston to conduct business with it. In 1985, McDonough Caperton Insurance Group again became Cannelton's broker.

Cannelton submitted affidavits on its behalf in opposition to the defendants' *forum non conveniens* motion. In those affidavits, William C. Miller II, Cannelton's General Counsel, stated that Cannelton does not have any offices in Michigan and all its records that are relevant to the declaratory judgment action are either in its Charleston office or in its lawyers' Charleston offices. Furthermore, Mr. Miller averred that all the documents involving the property in Michigan were transferred to Charleston when Cannelton was sold. He also claimed that some of the copies of Algoma's insurance policies that cover the property are in Charleston.

### III.

#### *FORUM NON CONVENIENS* ANALYSIS

Cannelton argues that the circuit court erred in applying the doctrine of *forum non conveniens* to the facts of this case. We adopted this common law doctrine in *Norfolk & Western Railway Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990). We stated in Syllabus Points 1 and 3 of *Tsapis:*

"1. The common law doctrine of *forum non conveniens* is simply that a court may, in its sound discretion, decline to exercise jurisdiction to promote the convenience of witnesses and the ends of justice, even when jurisdiction and venue are authorized by the letter of a statute."

"3. The common law doctrine of *forum non conveniens* is available to courts of record in this State. The doctrine accords a preference to the plaintiff's choice of forum, but the defendant may over-

---

**6.** The defendants claim in their brief that none of these corporations, AMAX Coal Industries, Inc.; AMAX Energy, Inc.; or AMAX, Inc., which be-
came Cyprus Amax Minerals Company, Inc., are incorporated or have their principal places of business in West Virginia.

this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously. To the extent that *Gardner v. Norfolk & Western Railway Co.*, 179 W.Va. 724, 372 S.E.2d 786 (1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193, (1989), declined to apply this doctrine, it is overruled."

■ As indicated in Syllabus Point 1, it is within the circuit court's sound discretion to decline to handle a case on the basis of *forum non conveniens*. Similarly, the United States Supreme Court in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981), stated "[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion[.]" (Citations omitted). We agree with the standard of review adopted by the Supreme Court and incorporate it with Syllabus Point 1 of *Tsapis*. Therefore, we hold that a circuit court's decision to invoke the doctrine of *forum non conveniens* will not be reversed unless it is found that the circuit court abused its discretion. *See Abbott v. Owens–Corning Fiberglas Corp.*, 191 W.Va. 198, 203, 444 S.E.2d 285, 290 (1994) (where we applied an abuse of discretion standard to determine if the trial court erred by dismissing actions based upon *forum non conveniens*).

In addressing the standard of review, the Supreme Court added in *Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266, 70 L.Ed.2d at 436, that "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, [the circuit court's] decision deserves substantial deference." *Citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511–12, 67 S.Ct. 839, 844, 91 L.Ed. 1055, 1064 (1947); *Koster v. (American) Lumbermens Mut.*

*Cas. Co.*, 330 U.S. 518, 531, 67 S.Ct. 828, 835, 91 L.Ed. 1067, 1078 (1947). We discussed the public and private interests addressed in *Gilbert* in *Tsapis*, 184 W.Va. at 234–35, 400 S.E.2d at 242–43, where we said:

" 'Included among the private interests of the litigants are: the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; the possibility of a view of property, if such a view would be appropriate in the action; the enforcibility [sic] of any judgment; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

" 'The public interests include the relative congestion of the respective courts' dockets; the burden of imposing jury duty upon the citizens of a community which has no or very little relation to the litigation; the local interest in having localized controversies decided at home; and the advantages of conducting a trial in a forum familiar with the applicable law and of avoiding conflicts of law. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, 91 L.Ed. at 1062–63.' [*Gardner v. Norfolk & Western Railway Co.*,] 179 W.Va. [724] at 729–30, 372 S.E.2d [786] at 791–92 [ (1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989), *overruled* by *Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990) ]." [7]

We further said in *Tsapis* that this list of interests is not exhaustive, and the Supreme Court suggested additional considerations in *Piper Aircraft Co. v. Reyno, supra.* These additional interests include: "that a *forum non conveniens* motion could not be defeated solely because the substantive law was more favorable in the chosen forum than in the alternative forum, although this could be a factor to be considered"; that a forum selected by a plaintiff "was entitled to great deference, but this preference may be diminished when the plaintiff is a non-resident and the cause of action did not arise in the forum state"; and that any single "factor was [not]

---

7. *Gardner* was overruled in Syllabus Point 3 of *Tsapis* to the extent that *Gardner* held that the doctrine of *forum non conveniens* was not available to courts of record in West Virginia. For a discussion of both *Gardner* and *Tsapis*, see *State ex rel. Smith v. Maynard* 193 W.Va. 1, 5, 454 S.E.2d 46, 50 (1994).

necessarily dispositive in a *forum non conveniens* analysis and that the doctrine had to be applied flexibly and on a case-by-case basis." 184 W.Va. at 235, 400 S.E.2d at 243.

█ We recognized in *Abbott, supra,* that what *Tsapis* does is provide the framework for a *forum non conveniens* analysis. We stated in Syllabus Point 3, in part, of *Abbott:* "The framework to analyze whether the common law doctrine of *forum non conveniens* is applicable has been set forth in *Norfolk and Western Ry. Co. v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990). This framework ensures that the doctrine of *forum non conveniens* is applied flexibly and on a case-by-case basis[.]" Therefore, we conclude the present case is controlled by the framework set up by *Tsapis* that outlines the interests set forth by the Supreme Court in *Gilbert, supra,* and *Piper Aircraft, supra.*[8] However, these interests are not exhaustive, and, as indicated in Syllabus Point 3 of *Abbott,* the doctrine is applied flexibly to each case.

### A.

#### *Plaintiff's Choice of Forum*

█ Cannelton first argues that under cases decided by both West Virginia and the United States Supreme Court, its choice of forum, Charleston, West Virginia, is entitled to "greater deference" and it is a "key consideration" because Charleston also is where its principal place of business is located.[9] However, as announced in Syllabus Point 3 of

*Tsapis, supra,* the weight that should be given to a plaintiff's choice of forum is one of "preference," and a defendant "may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously." Thus, in the present case, it was the defendants' burden to present sufficient facts to the circuit court to overcome Cannelton's preference of proceeding with the action in Kanawha County.

In support of their position, the defendants argue that the only connection with West Virginia is that Cannelton is located in Charleston. On the other hand, they assert there is a substantial nexus between Michigan and the declaratory judgment action, and they claim Michigan is the appropriate forum to handle the dispute. The defendants maintain that all the public and private interests examined on a *forum non conveniens* motion, see *Tsapis, supra,* weigh in favor of Michigan. Therefore, to determine if the circuit court abused its discretion in granting the defendants' motion, we review the circuit court's application of these interests.

### B.

#### *Public Interest*
#### 1.

#### Congestion of the Courts' Dockets

The first public interest to consider under the *Gilbert* matrix is "'the relative conges-

---

8. We realize that the application of the doctrine of *forum non conveniens* has been limited in federal courts by the enactment of 28 U.S.C. § 1404(a) (1948), which is a venue statute. The Supreme Court said in *American Dredging Co. v. Miller,* —— U.S. ——, ——, n. 2, 114 S.Ct. 981, 986 n. 2, 127 L.Ed.2d 285, 294 n. 2 (1994), that "the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." See *State ex rel. Smith v. Maynard,* 193 W.Va. at 7–8, 454 S.E.2d at 52–53 for a discussion of the development of 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens.*

9. To support its position, Cannelton quotes *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. at 524, 67 S.Ct. at 832, 91 L.Ed. at 1074 (1947), as stating that " '[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum

will normally outweigh the inconvenience the defendant may have shown.'" *Koster* was decided on the same day as *Gilbert, supra.* The phrase "greater deference" actually is used in *Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 266, 70 L.Ed.2d at 435, where the Supreme Court said "[t]he District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster,* the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." (Citation and note omitted).

Cannelton also relies on *Tsapis* for the "key consideration" language. The context in which we used this language in *Tsapis* is in the sense that "a *key consideration* is the residence of the plaintiff, since the doctrine [of *forum non conveniens* ] historically accords *preference* to the choice of the resident plaintiff." 184 W.Va. at 236, 400 S.E.2d at 244. (Emphasis added).

tion of the respective courts' dockets[.]'" *Tsapis*, 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). In its "FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS BASED UPON THE DOCTRINE OF FORUM NON CONVENIENS" entered on September 28, 1993 (final order), the circuit court concluded that due to its already congested docket and the "relatively uncongested docket" of the United States District Court for the Western District of Michigan, this public interest "favors the dismissal of this action based upon the doctrine of forum non conveniens." [10] In their brief, the defendants add that the judge for the United States District Court for the Western District of Michigan has indicated to Commercial Union's and Cannelton's counsel that he is ready and willing to proceed with the case. In addition, they claim the Circuit Court of Chippewa County is ready to proceed. Cannelton states that the judge for the district court only has represented that he was ready to proceed on the action pending before him, not Commercial Unions' comprehensive action.

Cannelton responds to the circuit court's conclusion and the argument by the defendants by stating that the Circuit Court of Kanawha County has ways to expeditiously handle the case. Primarily, Cannelton argues that discovery matters may be referred to a commissioner or master, pursuant to Rule 16(c)(6) of the West Virginia Rules of Civil Procedure,[11] and former circuit court judges and former justices of this Court may

"be assigned duties as needed and as feasible toward the objective of reducing caseloads and providing speedier trials to litigants throughout the state[.]" W.Va.Code, 51–9–10 (1991).[12]

Although we agree with Cannelton that there are avenues the circuit court can take to make the case more efficient, this case still will consume a tremendous amount of the circuit court's energy and resources. Therefore, after reviewing the circuit court's conclusion and the defendants' and the plaintiff's arguments, we find the circuit court did not abuse its discretion in deciding this public interest favors a Michigan forum.

### 2.

### Jury Duty

The second public interest to consider in the *Gilbert* matrix is the imposition of jury duty. *Tsapis*, 184 W.Va. at 234, 400 S.E.2d at 242. In the final order, the circuit court concluded that "it is far more appropriate to have the citizens of Michigan shoulder the burden of jury duty." The circuit court said "[i]t would be unjust and unreasonable to impose jury duty on the citizens of Kanawha County, who most likely would be required to spend many days trying to determine complicated insurance and environmental issues" for a piece of property located in Michigan. Thus, the circuit court found "[t]he imposition of jury duty on local residents favors Michigan."

Cannelton asserts that the circuit court erred by finding the imposition of jury duty

---

**10.** Specifically, the circuit court found that "[f]rom the statistics provided in conjunction with briefing on this motion, the United States District Court for the Western District of Michigan has a relatively uncongested docket with an individual judge's case load being four times less than the individual case loads of judges in this Court."

**11.** Rule 16(c)(6) provides: *"Subjects to be discussed at pretrial conferences.* The participants at any conference under this rule may consider and take action with respect to: ... (6) The advisability of referring matters to a commissioner or master[.]"

**12.** W.Va.Code, 51–9–10, provides in full:
   "The West Virginia supreme court of appeals is authorized and empowered to create a panel

of senior judges to utilize the talent and experience of former circuit court judges and supreme court justices of this state. The supreme court of appeals shall promulgate rules providing for said judges and justices to be assigned duties as needed and as feasible toward the objective of reducing caseloads and providing speedier trials to litigants throughout the state: Provided, That reasonable payment shall be made to said judges and justices on a per diem basis: Provided, however, That the per diem and retirement compensation of a senior judge shall not exceed the salary of a sitting judge, and allowances shall also be made for necessary expenses as provided for special judges under articles two and nine [§§ 51–2–1 et seq. and 51–9–1 et seq.] of this chapter."

upon residents of West Virginia "would be unjust and unreasonable[.]" Cannelton claims jury duty is a civic responsibility in such cases. We do not dispute that jury duty is a civic responsibility; however, the standard with regard to this interest is " 'the burden of imposing jury duty upon the citizens of a community which has no or very little relation to the litigation[.]' " *Tsapis*, 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). In light of our decision as to West Virginia's relationship to the litigation, *see* Section III(B)(3) and (4), *infra*, we find the circuit court did not abuse its discretion in deciding the burden of jury duty rests more appropriately on the citizens of Michigan.

### 3.

### Interest in Deciding Local Controversies

The third public interest is " 'the local interest in having localized controversies decided at home[.]' " *Tsapis*, 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). The circuit court stated in its final order that the interest in having this matter decided in West Virginia is "minimal, at best," while the interest in having this matter decided in Michigan "is substantial." The circuit court found, *inter alia*, the property in Michigan does not have any direct relationship with Cannelton's primary business, coal mining. Moreover, the "litigation does not have the direct impact on West Virginia citizens [as] it has on those citizens who live near the tannery site in Michigan." Therefore, the circuit court concluded that "the interest in having local controversies decided at home, favors Michigan."

Cannelton argues that the primary issue to be resolved by this litigation is not the cleanup of the property but, instead, is whether the defendants will be required to defend and/or indemnify it if a suit is brought by the USEPA and the MDNR. Thus, Cannelton asserts there are actually two separate and distinct actions. Cannelton maintains that the residents of West Virginia have a substantial interest in resolving insurance disputes for policies issued to West Virginia consumers, and, therefore, the circuit court erred in concluding that the interest in the local controversy favors Michigan.

We agree with Cannelton that West Virginia residents have more than a "minimal" interest in resolving questions involving insurance policies issued to West Virginia consumers. *See generally Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 182 W.Va. 580, 585 n. 8, 390 S.E.2d 562, 567 n. 8 (1990). However, we find that it is clear that not all the policies were issued in West Virginia, or, for that matter, were issued to Cannelton. Some of the policies in controversy were issued to Algoma in Canada. In addition, we are not so naive as to evaluate Cannelton's declaratory judgment action as entirely independent of the underlying action to have the property reclaimed. Certainly, the residents of Michigan have a direct and substantial interest in ensuring that hazardous material is removed from the property, and they have an interest in the outcome of this litigation because the alleged insured risk is in Michigan. Thus, we find both West Virginia and Michigan residents have an interest in the controversy and, therefore, the circuit court abused its discretion in determining West Virginia residents have a "minimal" interest. Nevertheless, for the reasons stated in Section III(B)(4), *infra*, we are unable to conclude the circuit court abused its discretion by determining that Michigan's interest was greater, especially in light of the fact that not all the insurance contracts were issued to Cannelton or were issued in West Virginia.

### 4.

### Forum Familiar with Applicable Law and Avoiding Conflicts of Law

■ The fourth public interest is " 'the advantages of conducting a trial in a forum familiar with the applicable law and of avoiding conflicts of law.' " 184 W.Va. at 234–35, 400 S.E.2d at 242–43. (Citations omitted). The circuit court found that pursuant to *Joy Technologies, Inc. v. Liberty Mutual Insurance Co.*, 187 W.Va. 742, 421 S.E.2d 493 (1992), "Michigan law likely will govern in this action because it is the state where the site is located as well as being the state with the most significant interest in this litigation." We agree.

■ In *Joy Technologies*, we relied upon *Triangle Industries, supra. Triangle Indus-*

*tries* answered a certified question that asked "whether West Virginia substantive law applies to the interpretation of the insurance policies" issued in New Jersey for an insured risk in West Virginia with the damage occurring in Ohio. 182 W. Va. at 583, 390 S.E.2d at 565. Triangle Industries was headquartered in New Jersey and owned a plant in West Virginia. This plant produced toxic waste that was disposed of in Ohio. We determined under the facts of the case that the substantive law of New Jersey should apply. In the Syllabus of *Triangle Industries,* we stated:

"In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, *unless another state has a more significant relationship to the transaction and the parties,* or the law of the other state is contrary to the public policy of this state." (Emphasis added).

In other words, we held in *Triangle Industries* that the place the insurance contract was entered into generally will control with two exceptions. First, it will not apply if there is a "more significant relationship to the transaction and the parties" in another state or, second, if it results in a conflict of public policy.

On an appeal in *Joy Technologies, supra,* we used the second exception of the Syllabus of *Triangle Industries,* and we applied the law of West Virginia rather than the law of Pennsylvania which is where the insurance contracts were formed. In addition, although we did not find it necessary to base our decision on the first exception to conclude the law of West Virginia applied, we did determine the facts suggest that West Virginia "had a very significant relationship to the transaction and the parties." 187 W.Va. at 746, 421 S.E.2d at 497. As it is relevant to the present case, we find the discussion in *Joy Technologies, Inc.* with regard to the first exception is persuasive authority.

The relevant facts of *Joy Technologies* are as follows. Joy Technologies, Inc. succeeded Joy Manufacturing Company (collectively Joy), a Pennsylvania corporation with its ex-

ecutive offices also located in Pennsylvania. During a period of time, Joy operated a facility in West Virginia which released PCBs. Over the course of many years, Liberty Mutual Insurance Company (Liberty Mutual) issued to Joy certain insurance policies where it obligated itself "to defend and indemnify Joy for liability claims based on personal injury or property damage arising out of an 'occurrence' ... defined ... as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.'" 187 W.Va. at 744, 421 S.E.2d at 495.

Beginning in 1972, the policies issued by Liberty Mutual also had an exclusion clause which provided:

"'[T]o bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.'" 187 W.Va. at 744, 421 S.E.2d at 495. (Footnote omitted).

Thereafter, when Joy sought to have Liberty Mutual defend and indemnify it against damages caused by the PCB contamination, Liberty Mutual denied coverage based upon the exclusion clause.

With regard to the first exception of the Syllabus of *Triangle Industries,* we found in *Joy Technologies:*

"The action in the present case arises out of the expenditures of monies for remediating damage caused by pollution to property in West Virginia, and it is rather clear that the pollution arose from operations which were conducted in West Virginia and involved a facility located in West Virginia. Thus, the injury occurred in West Virginia, the instrumentality of injury was located in West Virginia, and the forum selected to try the issues was West Virginia.... [T]he relationship would appear to be more substantial than that of

Pennsylvania, where the contract was formed." 187 W.Va. at 745–46, 421 S.E.2d at 496–97.

In addition, we cited as support the New Jersey case of *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Association Insurance Co.*, 254 N.J.Super. 43, 50–51, 603 A.2d 61, 65 (App.Div.1992), *aff'd*, 134 N.J. 96, 629 A.2d 885 (1993). Under facts similar to *Joy Technologies*, we quoted the New Jersey court as stating:

> " 'We hold that New Jersey courts should interpret according to New Jersey [substantive] law a pollution exclusion clause contained in a comprehensive general liability insurance policy, wherever written, which was purchased to cover an operation or activity, wherever its principal location, which generates toxic wastes that predictably come to rest in New Jersey and impose legal liabilities there on the insured. In such a case, New Jersey has the dominant and significant relationship with the parties, the transaction, and the outcome of the controversy.' " 187 W.Va. at 746, 421 S.E.2d at 497. ("[S]ubstantive" in original).

Thus, the New Jersey court applied its law to a pollution exclusion clause rather than the law of the state where the contract was formed.

Applying the criteria we used in *Joy Technologies* to conclude that West Virginia had a "more substantial" relationship than Pennsylvania, we find Michigan has a "more substantial" relationship to this litigation than does West Virginia. The present action arises out of money to be spent "remediating damage caused by pollution to property" in Michigan. In addition, it is "clear that the pollution arose from operations which were conducted in [Michigan] and involved a facility located in [Michigan]. Thus, the injury occurred in [Michigan, and] the instrumentality of injury was located in [Michigan]." 187 W.Va. at 745–46, 421 S.E.2d at 496–97. The only fact that may be considered different in the present case from the facts we used in *Joy*

*Technologies* is that in *Joy Technologies* West Virginia was the selected forum to try the issues. In the case at bar, Cannelton brought the declaratory judgment action in West Virginia, not Michigan. However, as previously mentioned, Commercial Union filed its action in the United States District Court for the Western District of Michigan *prior* to Cannelton's filing its action in West Virginia. Moreover, the USEPA and the MDNR are pursuing their action in Michigan. Under these facts, we do not find this difference significant. Consequently, for the foregoing reasons, we determine that if this case were tried in West Virginia, the law of Michigan would apply. Therefore, we conclude that the circuit court did not abuse its discretion in deciding that "the advantages of conducting a trial in a forum familiar with the applicable law and of avoiding conflicts of law" favors Michigan. *Tsapis*, 184 W.Va. at 234–35, 400 S.E.2d at 242–43.[13]

Cannelton further asserts that the law of Michigan violates the public policy of West Virginia. In *Joy Technologies*, we determined that "the insurance industry ... represented to the State of West Virginia, acting through the West Virginia Commissioner of Insurance, that the exclusion ... [at] issue ... merely clarified the pre-existing 'occurrence' clause." 187 W.Va. at 748, 421 S.E.2d at 499. As a result, we said to interpret the clause in a manner inconsistent with the way Liberty Mutual originally represented the exclusion clause to the State to get it approved would be contrary to public policy. *See Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 338, 424 S.E.2d 256, 265 (1992) (stating "[i]n *Joy Technologies*, ... the public policy issue did not arise from the conflict between the substantive law of Pennsylvania and West Virginia, but rather from the wrongdoing of the insurer").

We interpreted the policies in *Joy Technologies* not to exclude "pollution damage, even if it resulted over a period of time and was gradual, so long as it was not expected or intended." 187 W.Va. at 749, 421 S.E.2d at 500. (Footnote omitted). Cannel-

---

**13.** In part, the circuit court reasoned that *Joy Technologies* stands for the proposition "that the law of the forum where the property is located is the applicable law." We do not agree with this conclusion. In cases such as the one at bar, the location of the property is merely one factor to consider in determining the significance of the relationship to a particular forum.

ton states "[t]he majority of the policies that are the subject matter of this action contain the same or similar pollution exclusion" clauses. Cannelton further asserts that in *Upjohn Co. v. New Hampshire Insurance Co.*, 438 Mich. 197, 201, 476 N.W.2d 392, 394 (1991), the Michigan Supreme Court said the pollution exclusion clauses are unambiguous and "the definition of 'sudden' includes a temporal element as well as a sense of the unexpected, and that 'accidental' means unexpected and unintended." Therefore, Cannelton claims it may be denied coverage under Michigan law and, therefore, it would be contrary to the public policy of West Virginia.

We do not believe it is necessary to go into a lengthy analysis to decide whether Michigan law violates a public policy of West Virginia when it arises as a result of a *forum non conveniens* motion and where we already have determined that Michigan has a more significant interest than West Virginia. As the United States Supreme Court in *Piper Aircraft* accurately and descriptively explained:

"In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper.

\* \* \* \* \* \*

"... If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions. First, the trial court would have to determine what law would apply if the case were tried in the chosen forum, and what law would apply if the case were tried in the alternative forum. It would then have to compare the rights, remedies, and procedures available under the law that would be applied in each forum. Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum. The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law." 454 U.S. at 250–51, 102 S.Ct. at 263, 70 L.Ed.2d at 432–33.

The Supreme Court also stated that every Federal Court of Appeals that had addressed the question, except for the court below in the *Piper Aircraft* case, held an action may be dismissed upon *forum non conveniens* even if the plaintiff has a lesser likelihood of recovery in the other forum. 454 U.S. at 250, 102 S.Ct. at 263, 70 L.Ed.2d at 432.

We agree with the analysis of the Supreme Court; and, therefore, we find "if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless.... Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper." 454 U.S. at 250, 102 S.Ct. at 263, 70 L.Ed.2d at 432. For these reasons, we give little weight to Cannelton's argument that the substantive law of Michigan will be less favorable to it than the substantive law of West Virginia. Likewise, for the reasons announced by the Supreme Court, we decline to go through such a lengthy analysis of what law is more favorable and how it will impact Cannelton's interests. As to the argument that Michigan's law nonetheless would violate West Virginia's public policy, the present case is distinguishable from *Joy Technologies, supra*, in that *Joy Technologies* was an appeal from an order partially granting a motion for summary judgment. *Joy Technologies* did not involve the doctrine of *forum non conveniens*.

In sum, we find that Michigan has a more substantial interest than does West Virginia and the law of Michigan would apply if this case proceeded in West Virginia. Therefore,

we conclude the circuit court did not abuse its discretion by deciding that Michigan is more " 'familiar with the applicable law' " and will be more suitable to avoid " 'conflicts of law.' " *Tsapis*, 184 W.Va. at 234–35, 400 S.E.2d at 242–43. (Citations omitted).

## C.

### *Private Interests*

### 1.

### Access to Sources of Proof

The first private interest under the *Gilbert* analysis mentioned in *Tsapis* is " 'the relative ease of access to sources of proof[.]' " 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). In its final order, the circuit court found the property and documents pertaining to the property, which include "reports by the Michigan Department of Natural Resources, the Michigan Department of Public Health ..., the Chippewa County Public Health Department, and certain USEPA documents," are more easily accessible in Michigan than they are in West Virginia. In addition, the circuit court stated that Michigan "is convenient to obtain documents from Algoma Ltd. in Sault Ste. Marie, Ontario; Cannelton's insurance brokers in Toronto, Ontario; and USEPA Region V headquarters in Chicago, Illinois." Therefore, the circuit court concluded "[t]he sources of proof in this action most likely will be located predominantly in Michigan and not West Virginia."

Cannelton argues the main sources of proof are the insurance policies and not the actual property or the environmental documents pertaining to the property. Cannelton claims its policies are located in West Virginia and some of Algoma's insurance documents are also in West Virginia. Therefore, Cannelton contends West Virginia is the most convenient forum. On the other hand, the defendants assert that "[t]he main sources of proof, to determine what transpired on the property, such as witnesses, the property itself, and necessary documents, are located in or near Chippewa County, Michigan."

At first glance, Cannelton's argument that this action is a contractual dispute and can be resolved merely by examining the insurance policies and other related insurance records seems persuasive. However, as Cannelton raised in the preceding section, *see* Section III(B)(4), a majority of the insurance policies at issue here contain an exclusion clause similar to that in *Joy Technologies, supra.* Therefore, documents, testimony, and evidence related to the property may be critical in determining whether or not there is insurance coverage. Such information would be necessary to characterize the nature and cause of the pollution to determine if the exclusion will apply.

Regardless of where this action is heard, we realize documents will need to be photocopied and transported to the forum state. It appears that relevant sources of proof exist in West Virginia, Michigan, and Canada. Given these facts, we cannot say that the circuit court abused its discretion in finding the ease of availability of the sources of proof favors Michigan over West Virginia.

### 2.

### Witnesses

The second private interest to consider contains two parts. First is " 'the availability of compulsory process for the attendance of unwilling witnesses' " and, second is " 'the cost of obtaining the attendance of willing witnesses[.]' " *Tsapis*, 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). In its final order, the circuit court determined the majority of witnesses, which include former tannery employees and Algoma officials, live in Michigan and Ontario, Canada. The circuit court stated it had no authority to compel the Michigan witnesses to appear in West Virginia, and, moreover, "Michigan would be a far more convenient forum if it becomes necessary to utilize the Ontario provincial courts to compel testimony from unwilling witnesses residing in Ontario, Canada."

As to the second part of this private interest, the circuit court stated it would be "far less expensive and time consuming" for the witnesses from Michigan and Ontario "to attend court in Michigan rather than to travel to West Virginia." In addition, the circuit

court said "a number of the former tannery employees likely are advanced in age and it would be difficult, if not impossible, to expect these witnesses to undertake the long trip from Sault Ste. Marie, Michigan, to Charleston, West Virginia."

In response, Cannelton admits there is no one jurisdiction where all the witnesses are located. Cannelton also admits depositions will need to be taken and documents will need to be gathered from representatives "across the United States and in Canada, and possibly England." However, Cannelton argues that for the nonparty witnesses it has identified, West Virginia will be more convenient.

It is obvious to this Court that this litigation will involve a variety of witnesses from a variety of places. On review of the facts presented by both parties, it is difficult for us to determine what state favors " 'the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses[.]' " *Tsapis,* 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). Therefore, we cannot say the circuit court abused its discretion in making findings of fact that favor Michigan.

### 3.

### View of the Property

The third private interest pursuant to *Tsapis* is " 'the possibility of a view of [the] property, if such a view would be appropriate in the action[.]' " 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). In its final order, the circuit court stated "[i]t would be extremely difficult and likely prohibitively expensive for this Court to arrange a jury view of the Michigan site. Due to the nature of this action, it is quite likely that the jury will need to view the tannery property." The circuit court, therefore, concluded that this private interest also favors Michigan.

Cannelton argues a view of the site is not needed to decide this declaratory judgment action, so this private interest should not have been considered by the circuit court. Moreover, Cannelton asserts any necessary

information could be shown by such items as maps, charts, and photographs and, in fact, if a jury was permitted to view the property, it may be misleading because the property has changed over time.

We agree with Cannelton that this private interest probably is not as critical to this case as some of the other public and private interests discussed and, if necessary, probably could be addressed by visual aids. However, the first key word with regard to this interest is the "possibility" of seeing the property. 184 W.Va. at 234, 400 S.E.2d at 242. It is *possible* that a jury may view the property to help it determine the cause and nature of the pollution to decide if the exclusion clause applies. *See* Section III(B)(4), *supra.* To this extent, Michigan certainly would be more convenient. We, therefore, find the circuit court did not abuse its discretion by considering this interest; although, under the facts, we give this consideration little weight in evaluating the circuit court's general decision to dismiss the action.

### 4.

### Enforceability of Judgments

The fourth private interest is " 'the enforcibility [sic] of any judgment[.]' " *Tsapis,* 184 W.Va. at 234, 400 S.E.2d at 242. (Citations omitted). The circuit court determined this factor was not an issue because both Michigan, in Mich.Comp.Laws § 691.1151, *et seq.,* and West Virginia, in W.Va.Code, 55–14–1, *et seq.,* have adopted the Uniform Enforcement of Foreign Judgments Act. Therefore, a judgment in Michigan is enforceable in West Virginia and vice versa. We agree with the circuit court and, thus, do not address this interest.

### 5.

### All Other Practical Problems

As to the fifth and final private interest in *Tsapis,* 184 W.Va. at 234, 400 S.E.2d at 242, " 'all other practical problems that make a trial of a case easy, expeditious and inexpensive,' "[14] the circuit court concluded Cannelton "would incur little additional expense by litigating this action in Michigan" because Cannelton already has retained counsel in

**14.** Citations omitted.

Michigan and Cannelton's lead counsel is admitted to practice in the United States District Court for the Western District of Michigan. Additionally, the court said "significant costs will be saved by *avoiding* hearing motions and attending conferences in West Virginia while conducting discovery in Michigan and Ontario." (Emphasis in original).

Cannelton contends there is no evidence in the record to support the circuit court's conclusion that it will "incur little additional expense[.]" In fact, Cannelton asserts it will be much more expensive for it to get its witnesses and counsel to Michigan and to transport and store its documents in Michigan.

It may well be that it is more expensive for Cannelton to litigate this matter in Michigan. However, we view this factor in relation to all the parties, not merely Cannelton. As previously discussed, regardless of where this action ultimately is decided, witnesses will need to travel and documents will need to be transported. Moreover, the expense of the action is not the only criteria under this private interest. The two other criteria are how easy and how expeditiously a trial can proceed. We certainly find it arguable that Michigan would be an easier and more expeditious forum to handle this matter in light of the fact there are two interrelated actions involved—one involving the clean-up of the property and the other being who is going to pay for the clean-up of the property. Consequently, we conclude the circuit court generally did not abuse its discretion by finding this interest favors Michigan.

## IV.

### SERVICE OF SUIT CLAUSES

■ The last argument this Court needs to address to resolve the present case concerns the application of service of suit clauses. The parties agree that a number of the insurance policies contain a service of suit clause.[15] One of the clauses, which Cannelton asserts is typical of the other clauses, appears in a policy issued by St. Paul. This clause states in relevant part:

> "It is agreed that in the event of the failure of this Company hereon, to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."[16]

Cannelton argues these clauses operate as both a forum selection clause and a choice of law clause. For the following reasons, we disagree.

Initially, we distinguish a service of suit clause, as exists in the present case, from forum selection clauses and choice of law clauses. For example, in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 2, 92 S.Ct. 1907, 1909, 32 L.Ed.2d 513, 516 (1972), the United States Supreme Court approved as valid a forum selection clause which provided: " 'Any dispute arising must be treated before the London Court of Justice.' " The Supreme Court held "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S.Ct. at 1913, 32 L.Ed.2d at 520. (Footnote omitted).

Similarly, in *Bryan v. Massachusetts Mutual Life Insurance Co.*, 178 W.Va. 773, 777, 364 S.E.2d 786, 790 (1987), we upheld a choice of law clause which stated: " '*Interpretation* —This contract shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts.' " In upholding the provision, we relied upon *General*

---

15. The parties do not agree as to the exact number of these clauses. Cannelton claims that 39 or 40 of the moving defendants included or incorporated by reference such clauses in their policies. On the other hand, the defendants assert only 8 of the policies contain such clauses and each is contained in an excess insurance policy.

16. In their supplemental brief, the defendants quote the service of suit clause in the London policies which is virtually identical to the language in St. Paul's policy.

*Electric Co. v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981), *modified on other grounds, Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988), where we stated in Syllabus Point 1 that "[a] choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of the state." [17]

These clauses are distinguishable from the service of suit clauses at issue in the present case. Both the clause in *Bremen* and the clause in *General Electric* explicitly state the forum where an action should be heard or the law which should be applied. On the other hand, no mention of a specific forum or a specific forum's law is made in the present service of suit clauses. Instead, in these service of suit clauses, the insurers agree to "submit to the jurisdiction of any Court of competent jurisdiction within the United States" and they agree to "comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." Several other jurisdictions have addressed this distinction and find it significant.

Recently, the New York Supreme Court, Appellate Division, Fourth Department, held that a " 'Service of Suit' clause is not a 'choice of forum' provision." *Price v. Brown Group, Inc.,* 206 A.D.2d 195, 619 N.Y.S.2d 414, 416 (4 Dept.1994). In *Price,* the New York Supreme Court interpreted a service of suit clause substantively identical to the one at issue in the present case. The insurer in *Price* filed a declaratory judgment action in New York to determine if it was obligated to provide coverage to the insured arising from the insured's involvement in tannery wastes being disposed of in New York. After the insurer filed the New York action, the insured filed an action in Missouri where the policies were issued and the insured had seventeen additional sites. The insured then filed a *forum non conveniens* motion in New York.

In interpreting the provision, the New York Supreme Court found there was "nothing in the wording of the provision that would lead one to the conclusion that it entailed more than [insurer's] voluntary submission to the jurisdiction of the courts of the United States." 619 N.Y.S.2d at 417. Moreover, the court said the clause did not provide an insured "has the exclusive right to select the court where all disputes arising under the contract are to be resolved . . . [or] by its terms preclude [the insurer] from filing an action to adjudicate its rights under the contract, nor does it prescribe the forum for the action." 619 N.Y.S.2d at 417. Therefore, the court held to infer that the insurer does not have a right to file an action would be "unreasonable[.]" 619 N.Y.S.2d at 417.

In denying the insurer's motion on the basis of *forum non conveniens,* the New York Supreme Court relied, in part, upon the analysis conducted by the United States Court of Appeals for the Fifth Circuit in *International Insurance Co. v. McDermott Inc.,* 956 F.2d 93 (5th Cir.), *cert. denied* ─── U.S. ───, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The issue presented to the Court of Appeals was whether an insured could file an action and use a service of suit clause to have a previously filed action by an insurer dismissed. Both the New York Supreme Court and the Fifth Circuit concluded that to allow an insured to so use a service of suit clause would be wrong. Although both courts realized it may lead to a race to the courthouse between the insured and the insurer, to allow an insured to remove an otherwise valid declaratory judgment action made by an insurer would deny "the insurer of its right to seek a declaratory judgment or other redress from the courts. The Service of Suit clause certainly was not so intended." 956 F.2d at 96.

We agree with the New York Supreme Court and the Court of Appeals that service of suit clauses clearly are not intended to prevent an insurer from filing a declaratory

---

**17.** We explained in *General Electric,* 166 W.Va. at 462 n. 2, 275 S.E.2d at 292 n. 2, that forum selection clauses and choice of law clauses are not per se invalid, but are subject to careful analysis and scrutiny.

judgment action or to permit an insured to remove an insurer's action. If an insured wants to guarantee actions are heard in a specific jurisdiction or under a specific jurisdiction's law, such specificity should be written in the policy. However, we do not place the same emphasis on the requirement that the insurer file its action first when a *forum non conveniens* motion is made.

■ The goal of *forum non conveniens* is to have the action decided in the most convenient forum. Thus, it should not matter whether the insurer or the insured files the first action. The phrase in a service of suit clause stating the insurer "will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America" does not restrict the insurer from bringing an action in another forum and from subsequently filing a *forum non conveniens* motion in a forum selected by the insured. Moreover, the phrase "and all matters arising hereunder shall be determined in accordance with the law and practice of such Court" includes a determination in accordance with the doctrine of *forum non conveniens* if the doctrine is available to the court. Thus, an insurer agrees to submit to a United States court of competent jurisdiction selected by the insured; however, it may utilize the doctrine of *forum non conveniens* if the doctrine is within the "law and practice of such Court." [18]

■ To rest a decision on who files first could allow an insured who won the race to the courthouse to maintain its action, provided it is otherwise valid, regardless of how

inconvenient the forum is. Without the insured and the insurer agreeing on a specific jurisdiction or on a specific jurisdiction's law to be applied, as in *Bremen, supra,* and *General Electric, supra,* we decline to interpret the service of suit clauses at issue in this case in such a way as to prevent an insurer from arguing a motion on the basis of *forum non conveniens.* We find that to hold otherwise would be unreasonable and clearly not what the parties intended. Thus, in making our decision, we comply with our general policy on interpreting insurance policies. As we stated in Syllabus Point 2 of *Prete v. Merchants Property Insurance Company of Indiana,* 159 W.Va. 508, 223 S.E.2d 441 (1976):

> " 'Ambiguous and irreconcilable provisions of an insurance policy should be construed strictly against the insurer and liberally in favor of the insured, although such construction *should not be unreasonably applied to contravene the object and plain intent of the parties.'* Point 2, *Marson Coal Co. v. Insurance Co.,* [158] W.Va. [146], 210 S.E.2d 747 (1974)." (Emphasis added).

*See also Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 340, 332 S.E.2d 639, 642 (1985); Syllabus Point 2, *Surbaugh v. Stonewall Cas. Co.,* 168 W.Va. 208, 283 S.E.2d 859 (1981).

## V.

## CONCLUSION

In sum, after reviewing all the relevant private and public interests of the *forum non*

---

**18.** Other jurisdictions have given similar effect to service of suit clauses. In *W.R. Grace & Co. v. Hartford Accident and Indemnity Co.,* 407 Mass. 572, 580, 555 N.E.2d 214, 218–19 (1990), the Supreme Judicial Court of Massachusetts said:

> "In our opinion, a service of suit clause does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens. A 'determination in accordance with the law and practice' of the court that the insured has selected refers to the whole law of the jurisdiction, including principles of forum non conveniens and rules governing the choice of law. We do agree with [the insured], however, that the service of suit clause bars an insurance company from relying on its own inconve-

nience to assert a claim of forum non conveniens."

*See also Appalachian Insurance Co. v. Superior Court (Union Carbide Corp.),* 162 Cal.App.3d 427, 440, 208 Cal.Rptr. 627, 635 (Cal.App.2 Dist. 1984) (stating the fact that "forum non conveniens protects the public interest as well as that of the litigants is paramount in our determination that the [service of suit clause] ... does not preclude the application of the doctrine of forum non conveniens").

Although we decline to adopt the policy in *Grace, supra,* with regard to not considering the insurer's inconvenience, even if we did not consider it, the result would be the same in the present case. The public and remaining private factors still favor the Michigan forum.

*conveniens* doctrine, we conclude the circuit court did not abuse its discretion in determining the doctrine of *forum non conveniens* favors Michigan. The defendants met their burden to overcome Cannelton's choice of forum by demonstrating that Michigan has a more substantial interest in the outcome of this action than does West Virginia and that Michigan is an available forum which will allow the case to proceed "substantially more inexpensively and expeditiously." Syllabus Point 3, in part, *Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990). We also find the service of suit clause at issue here is neither a forum selection clause nor a choice of law clause and it will not bar the defendants from arguing the doctrine of *forum non conveniens.* For the forgoing reasons, we hereby affirm the order of the Circuit Court of Kanawha County dismissing the action.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.