460 S.E.2d 18

**CANNELTON INDUSTRIES, INC.,**
**Plaintiff Below, Appellant,**

v.

**The AETNA CASUALTY & SURETY**
**COMPANY OF AMERICA, et al.,**
**Defendants Below, Appellees.**

**No. 22164.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 16, 1994.

John L. McClaugherty, W. Warren Upton, Gale R. Lea, Jackson & Kelly, Charleston, for appellant.

· James D. McQueen, Jr., Kathlene Harmon–McQueen, McQueen & Brown, Charleston, for the appellee West Virginia Ins. Guar. Ass'n.

McHUGH, Justice:

This case is before this Court upon appeal from the September 28, 1993, order of the Circuit Court of Kanawha County, West Virginia. Pursuant to the appellee's, West Virginia Insurance Guaranty Association (hereinafter "WVIGA"), motion to dismiss, the circuit court, in that order, dismissed the appellant's, Cannelton Industries, Inc. (hereinafter "Cannelton"), complaint with prejudice. The appellant asks that this Court reverse the circuit court's order and remand the case to the circuit court for further proceedings. For the reasons set forth below,

we agree with the circuit court's ruling that the case against the WVIGA should be dismissed.[1]

### I

■ Cannelton has numerous insurance carriers. Two of those carriers, Integrity Insurance Company (hereinafter "Integrity") and Midland Insurance Company (hereinafter "Midland"), became insolvent. Relief from insolvent insurers can be sought from the liquidator of the estate of the insolvent insurer, or through a state (property and casualty) guaranty association. *See, e.g.,* W.Va.Code, 33–10–1, *et seq.* and W.Va.Code, 33–26–1, *et seq.*

In this case, Cannelton seeks relief from the WVIGA for claims that arose as a result of an environmental pollution action involving a site in Michigan owned by Cannelton. Cannelton submits that because it was not aware of the insolvencies of the two companies and it did not receive notice from the WVIGA (or from any other source), who was aware of the insolvencies, the WVIGA must indemnify Cannelton for the unpaid claims pending against the insolvent insurers.

### II

The circuit court's order was well-reasoned and detailed. The circuit court's order set forth the sequence of events that lead to the action discussed herein, the more significant of which are noted in this opinion.

Between December 31, 1984, and December 31, 1985, Cannelton was involved in the coal business in West Virginia and was insured by Integrity and Midland Insurance Company (hereinafter "Midland") under the companies' respective excess liability policies. On April 3, 1986, Midland was declared insolvent and ordered liquidated by the Supreme Court of New York. The court ordered that all policyholders be notified of the liquidation order and that *all proofs of claim be presented to the liquidator within a year, or by April 3, 1987.* The WVIGA was notified of Midland's insolvency by the West Virginia Insurance Commissioner on April 14, 1986.

On March 24, 1987, Integrity was declared insolvent and ordered liquidated by the Superior Court of New Jersey. The court further ordered that notice be given to all policyholders of the liquidation and that *all claims or potential claims be filed with the liquidator within a year, or by March 25, 1988.* The West Virginia Insurance Commissioner notified the WVIGA of the insolvency on March 31, 1987.

Cannelton received a letter, on June 23, 1988, from the United States Environmental Protection Agency (hereinafter "USEPA") informing Cannelton that it may be a responsible party and thus liable with regard to an environmental pollution problem which occurred at the Michigan site owned by Cannelton. The Michigan Department of Natural Resources (hereinafter "MDNR") joined the USEPA in these allegations. *See Cannelton Industries, Inc. v. The Aetna Casualty & Surety Company of America,* 194 W.Va. 186, 189–90, 460 S.E.2d 1, 4–5 (1994). Subsequently, on May 25, 1989, the USEPA issued, to Cannelton, a unilateral order regarding the problem.

On August 16, 1989, Cannelton notified Integrity of the environmental claims asserted by the USEPA and the MDNR. On November 6, 1989, Cannelton received a reply from Integrity in Liquidation informing Cannelton time had expired in which the claim could be considered timely filed; however, a subsequent claim could be filed but such a claim would share in the distribution of assets only after the timely filed claims had been paid.[2]

---

1. This is the companion case to *Cannelton Industries, Inc. v. The Aetna Casualty & Surety Company of America,* 194 W.Va. 186, 460 S.E.2d 1 (1994). A thorough recitation of the facts which give rise to the underlying action may be found in the companion case. In that opinion, this Court, in affirming the lower court, held that Michigan was the more convenient forum in

order for the case to proceed more inexpensively and expeditiously.

2. On April 14, 1993, the WVIGA received a letter from Integrity in Liquidation enclosing a proof of claim form. Cannelton received an announcement, on June 9, 1993, that Cannelton's claim was "allowed."

Cannelton notified Midland of the claims asserted by the USEPA and the MDNR on August 20, 1991. On January 15, 1992, the notice was forwarded first to the New York Liquidation Bureau and then to WVIGA for examination and possible coverage. Thereafter, on January 24, 1992, the WVIGA notified Cannelton that coverage was denied under the Midland policy and it would not indemnify Cannelton.

Cannelton instituted a declaratory judgment action against approximately 56 of its insurance carriers including the WVIGA on July 1, 1992. *See Cannelton, supra* at 188, 460 S.E.2d at 3. The complaint alleged that under *W.Va.Code,* 33–26–1, *et seq.,* the WVIGA was obligated to indemnify Cannelton for sums in excess of the limits in which Cannelton was obligated to pay in connection with the claims alleged by the USEPA and MDNR. The WVIGA moved to dismiss Cannelton's claims on the ground that the claims were not filed with the WVIGA before the final date for filing claims against the liquidators as set by the respective state courts. *See W.Va.Code,* 33–26–8(1)(a) [1985]. *See also Cannelton, supra* at 188–89 n. 2, 460 S.E.2d at 3–4 n. 2. On September 28, 1993, the circuit court granted the WVIGA's motion and dismissed Cannelton's complaint with prejudice stating that Cannelton's claims were filed late and therefore not covered claims.

### III

In reviewing this case, we are guided by the principles applying to motions for summary judgment.[3] We recently held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Upon reviewing a circuit court's summary judgment ruling, this Court has repeatedly held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Therefore, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, *Painter, supra.* Based upon a review of all relevant matters of record under the principles above, we are of the opinion that the circuit court did not err in dismissing the WVIGA from the case.

### IV

The primary focus of this case is upon whether the WVIGA, pursuant to *W.Va. Code,* 33–26–1, *et seq.,* was required to notify Cannelton of Midland's and Integrity's insolvencies and if, in any event, the WVIGA must indemnify Cannelton for its unpaid claims. The West Virginia Guaranty Association Act (hereinafter the "Act") was enacted in 1970, as set forth in chapter thirty-three, article twenty-six, section 1 of the *West Virginia Code.* The purpose of the Act is to provide for the payment of covered claims under certain insurance policies in the event that an insurer becomes insolvent and to aid in the detection and prevention of insurer insolvencies. *W.Va.Code,* 33–26–2 [1970]. The definitions of key terms are found in *W.Va.Code,* 33–26–5 [1985]. For the purposes of this case, we will specifically refer to the definition of the term "covered claim" which is defined as:

> [A]n *unpaid claim, ..., which arises out of and is within the coverage of an insurance policy* to which this article applies and which policy is in force at the time of the occurrence giving rise to such unpaid claims if (a) the insurer issuing the policy

3. In ruling upon the WVIGA's motion to dismiss, the record reflects that the circuit court considered matters outside of the pleadings. We have recognized on previous occasions that under Rule 12(c) of the *West Virginia Rules of Civil Procedure* when matters are considered outside of the pleadings, such motion is to be treated and disposed of as a motion for summary judgment under Rule 56 of the *W.Va.R.Civ.P. See Gunn v. Hope Gas, Inc.,* 184 W.Va. 600, 603, 402 S.E.2d 505, 508 (1991) and *Calacino v. McCutcheon,* 177 W.Va. 684, 685 n. 1, 356 S.E.2d 23, 24 n. 1 (1987).

becomes an insolvent insurer after the effective date of this article [May 12, 1970] and (b) the claimant or insured is a resident of this state at the time of the insured occurrence, or the property from which the claim arises is permanently located in this state.

*W.Va.Code*, 33–26–5(4) [1985], in relevant part (emphasis added).

The WVIGA is the association designated to carry out the purpose of this article, and it is a statutorily created nonprofit unincorporated legal entity. *W.Va.Code*, 33–26–6 [1970]. Its members include all property and casualty insurers licensed to transact insurance in the State. *Id. See also W.Va. Code*, 33–26–5(6) [1985]. The powers and duties of the WVIGA are enumerated in *W.Va.Code*, 33–26–8 [1985]. Our focus in this case is on the specific duties designated in *W.Va.Code*, 33–26–8(1)(a) and (e) [1985]:

(1) The association shall:

(a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency, and for such claims arising within thirty days after the determination of insolvency, but such obligation shall include only the amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligations of the insolvent insurer under the policy from which the claim arises. Notwithstanding any other provision of this article, *a covered claim shall not include any claim filed with the guaranty fund after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer,* nor shall any default judgment or stipulated judgment against the insolvent insurer, or against the insured of an insolvent insurer, be binding against the association.

. . . .

(e) *Notify such persons as the commissioner directs* under subsection (2), section ten [§ 33–26–10] of this article.

(emphasis added).

Under the Act, the West Virginia Insurance Commissioner (hereinafter the "Commissioner") has mandatory and discretionary duties pursuant to *W.Va.Code*, 33–26–10 [1970]. *See W.Va.Code*, 33–26–5(3) [1985]. For example, under *W.Va.Code*, 33–26–10(1)(a) [1970], the Commissioner *shall* "[n]otify the association of the existence of an insolvent insurer not later than three days after he receives notice of the determination of the insolvency." However, under *W.Va. Code*, 33–26–10(2)(a) [1970], in relevant part, the Commissioner *may* "[r]equire that the association notify the insureds of the insolvent insurer and any other interested parties of the determination of insolvency and of their rights under this article."

■ Our abbreviated review denotes the legislature's objective behind the Act's creation: This legislative Act is simply a means by which insureds, within this State, will be afforded some sort of remedy for their covered claims in the event that their insurer, licensed to do business in West Virginia, becomes insolvent. Moreover, the WVIGA is not an insurance company but a nonprofit organization created and designed to help alleviate the financial burden born by citizens of this State when their insurance carrier cannot fully satisfy their contractual obligations due to insolvency.

## V

Essentially, Cannelton submits that the responsibility, and the ultimate failure, of the New Jersey Commissioner of Insurance and the New York Superintendent of Insurance to notify Cannelton of the insolvencies of Integrity and Midland and the bar dates for filing proofs of claims should be attributed to the WVIGA.

In the case before us, the Commissioner, as required, notified the WVIGA of Midland's and Integrity's insolvencies on April 14, 1986, and March 31, 1987, respectively. *W.Va. Code*, 33–26–10(1)(a) [1970]. However, the Commissioner, because of his discretionary authority, did not have the duty to require the WVIGA to notify Cannelton, an insured of the insolvent insurers, of the insolvencies. *W.Va.Code*, 33–26–10(2)(a) [1970].

Furthermore, it was not until June 23, 1988, that Cannelton received a letter from the USEPA and thus was made aware of the impending litigation. As expressly stated in *W.Va.Code,* 33–26–8(1)(a) [1985], "a covered claim shall not include any claim filed with the guaranty fund after the final date set by the [liquidation] court for the filing of claims against the liquidator ... of an insolvent insurer[.]" The fact that there might have been a *potential* claim obviously did not surface until well after the bar dates for filing proofs of claims had expired in that the bar dates for Midland and Integrity were April 3, 1987, and April 25, 1988, respectively. Clearly, by the time Cannelton was faced with a viable claim (on May 25, 1989, the day the USEPA issued its environmental claim), it was no longer a "covered claim" under the Act.

Other courts have deliberated over whether to permit the filing of late notice of claims and have precluded recovery for late claims. For example, in Illinois, in the case of *Union Gesellschaft Fur Metal Industrie Co. v. Ins. Guar. Fund,* 190 Ill.App.3d 696, 138 Ill.Dec. 21, 546 N.E.2d 1076 (1989), the insured sought coverage from the state guaranty fund for claims submitted beyond the cutoff date for filing such claims. The guaranty fund denied coverage for the claims. The court, in upholding such denial declared:

> The requirement in the statute that claims be filed on or before the last date fixed for the filing of proofs of claim evidences an intent by the legislature to provide a cutoff date after which the Illinois Insurance Guaranty Fund is no longer obligated to indemnify claims. [Insured's] ignorance of the two specific claims against it is not recognized by statute to forgive a late filing of notice of the claims. While [insured] could not have filed any information respecting the two specific claims by the filing deadline ..., [insured's] plight is not to be remedied by this court. Courts have no legislative powers, and their sole function is to determine and, within constitutional limits of the legislative power, give effect to the intention of the lawmaking body.

*Id.,* 138 Ill.Dec. at 24, 546 N.E.2d at 1079 (citation omitted).

A Michigan court, in *Satellite Bowl, Inc. v. Mich. Property & Casualty Guaranty Association,* 165 Mich.App. 768, 419 N.W.2d 460 (1988), determined that a claim must be timely filed in order to be a covered claim under that state's statute. In arriving at this decision, the court noted the statutory requirement that claims be presented before the filing deadline and reasoned the legislative intent behind such statutory directive to be the following:

> The language implies that ... claims ... filed after the filing deadline, would not be indemnified. The statute does not authorize extension of the filing deadline for equitable reasons.
>
> There must be reasonable limits to the association's liability and finality to the liquidation proceedings.... It is important ... to the statutory scheme that the association be able to recover as much of the claim as possible from the insolvent insurer's estate. Thus, the association is obligated under the act to accept only claims timely filed which entitle it to participate in the liquidation proceedings....
>
> [A]llowance of delinquent claims would prolong distribution of the insolvent company's assets to the detriment of other claimants and would adversely affect the guaranty associations.

*Id.* 419 N.W.2d at 462.

In New York, some of the facts differ in the case of *Jason v. Superintendent of Ins.,* 67 A.D.2d 850, 413 N.Y.S.2d 17 (1979), but the court therein recognized some rudimentary principles applicable to the case before us. The insured, a physician, filed a claim with his insurer, and the claim was denied as being untimely filed. The insurer had been adjudged insolvent, but the insured asserted that he did not receive notice of his insurer's insolvency from the Superintendent of Insurance, the insurer's liquidator. The insured initiated proceedings to have his proof of claim deemed timely. Ultimately, the court therein held that "[w]hile [insured] could not have filed any information respecting the ... claim by the deadline ..., his ignorance of the claim is not recognized by statute to

forgive a late filing." *Id.* 413 N.Y.S.2d at 18 (citations omitted). The court also noted that "prejudice, indeed, arises if petitioner's deferred claim is admitted to participation in the security fund. There exists a potential for dilution of the timely filed claims[.]" *Id.*

■ Guaranty association acts are statutory creatures designed to "spread the risk of insolvency among insurance companies" and "protect [the interests of] insured[s]" who have claims against such insolvent insurers. 44 C.J.S. *Insurance* § 144 (1993). Likewise, many states have statutory directives regarding the procedure to be utilized when liquidating an insurance company. However, in the absence of a statutory scheme, the procedure to be followed for liquidation of insurers is within the discretion of the court. *Id.* at § 157. Therefore, notice requirements in liquidation proceedings, and the terms and conditions to follow, are either specified by statute or by the court. *See, e.g.,* Ga.Code Ann. § 33–37–21 (Supp.1994); Ill.Ann.Stat. ch. 215, para. 5/543.3 (Smith–Hurd 1993); N.Y. Insurance Law § 7432 (McKinney 1985); N.J.Stat.Ann. § 17:30C–30 (West 1994); and *W.Va.Code,* 33–10–1, *et seq.*

■ As noted above, we discussed the relevant provisions of West Virginia's statutory procedure pertaining to our guaranty association. West Virginia's statutes, regarding notice of insolvent insurers to the respective insureds by the WVIGA (by and through the Commissioner), is not compulsory but discretionary. *W.Va.Code,* 33–26–10(2)(a) [1970]. *Accord* Fla.Stat.Ann. § 631.59 (West 1984)

and Md.Code Ann., Insurance § 510 (1994). We, therefore, believe that Cannelton's argument in this case is misplaced. Cannelton has failed to offer any authority from any jurisdiction interpreting this statute as requiring that state guaranty associations are required to notified insureds in the event of an insolvency of an insurance company.[4] Regardless of whether the WVIGA was made aware of Midland's and Integrity's insolvencies, there is no authority to support the imposition of notice upon the WVIGA. Moreover, even if Cannelton had received notice of the insolvencies, whether from the liquidator or the WVIGA, Cannelton did not have a claim or even a potential claim subject to coverage under the Act. *See W.Va.Code,* 33–26–8(1)(a) [1985] and *W.Va.Code,* 33–26–5(4) [1985].

■ Accordingly, the West Virginia Guaranty Association is not required to notify insureds of the insolvent insurer unless the West Virginia Insurance commissioner requires that such notice be given pursuant to *W.Va.Code,* 33–26–10(2)(a) [1970] of the West Virginia Guaranty Association Act. Moreover, pursuant to the West Virginia Guaranty Association Act, specifically, *W.Va. Code,* 33–26–8(1)(a) [1985], the West Virginia Guaranty Association is "obligated to the extent of covered claims existing prior to the determination of insolvency, and for such claims ariasing within thirty days after the determination of insolvency.... [However,] [n]otwithstanding any other provision of this article, a covered claim shall not include any claim filed with the guaranty fund after the

---

**4.** Cannelton relies upon the often-cited case of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) in arguing it was error for the circuit court to conclude that Cannelton had not been denied its fundamental right to due process by the WVIGA denying its claims when it had no notice of the insolvencies. Cannelton asserts that despite clear statutory directives and court orders, neither liquidator gave Cannelton notice of the insolvencies, and the failure of the liquidators to notify Cannelton of the insolvencies and the bar dates for filing proofs of claims should be attributed to the WVIGA.

Cannelton's argument is not persuasive for two reasons. First, we are unaware, and Cannelton has failed to specify, any statutory directive or court order that requires the WVIGA to give notice to Cannelton. Second, we reiterate that

had Cannelton received timely notice of the insolvencies, Cannelton did not become aware of the claims in question until after the expiration of the bar dates for filing proofs of claims with Midland and Integrity. Under the language of the statute of *W.Va.Code,* 33–26–8(1)(a) [1985], the claims would clearly not have been covered.

It is important to note that the focus of this opinion is solely upon the issues of notice and time frames with respect to filing a proof of a claim. We are not asked to determine the merits of the claims or whether the claims are even covered under the respective policies. Thus, we make no judgment on whether the claims, in the event that Cannelton had notice, would have constituted covered claims under the very basic definition of a "covered claim" under *W.Va.Code,* 33–26–5(4) [1985].

final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer[.]"

Therefore, after a review of the laws of this state, the laws of other jurisdictions and all matters of record, we are of the opinion that the trial judge properly granted the WVIGA's motion that it be dismissed from any further proceedings. This Court may not provide exceptions to the legislative act. The legislature is the governmental body empowered to amend the statutory framework, and thus, if the legislature desires to amend *W.Va.Code*, 33–26–1, *et seq.* to provide for the exceptions asserted by Cannelton, it may specifically do so. *See* art. V, § 1 of the *West Virginia Constitution*. For all the reasons stated above, the judgment of the Circuit Court of Kanawha County is affirmed.[5]

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**5.** In light of our decision in *Cannelton, supra,* and the resolution of the issues herein, we need not address the other assignments of error raised by Cannelton in this appeal.