466 S.E.2d 388

STATE of West Virginia ex rel. Hanley C. CLARK, Insurance Commissioner of the State of West Virginia, Plaintiff Below, Appellee,

v.

BLUE CROSS BLUE SHIELD OF WEST VIRGINIA, INC., Defendant Below,

and

West Virginia State Medical Association, West Virginia Hospital Association, Blue Cross Western Pennsylvania, Pennsylvania Blue Shield, International Union United Mine Workers and Joann Williams, et al., Intervenors Below,

The Logan Medical Foundation, Intervenor Below, Appellant.

No. 22711.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Nov. 17, 1995.

WORKMAN, Justice:

This case arises out of the formal delinquency proceeding filed in the Circuit Court of Kanawha County by the Insurance Commissioner of the State of West Virginia (hereinafter "Appellee" or "Receiver") against Blue Cross/Blue Shield of West Virginia, Inc. (hereinafter "BCBS"). By order of Liquidation and Injunction (hereinafter "Liquidation Order") entered October 26, 1990, the circuit court found that BCBS was insolvent as of December 31, 1989, by almost thirty-three million dollars and had continued to incur operating losses of millions of dollars during 1990. Accordingly, the circuit court appointed the Insurance Commissioner as the Receiver of BCBS and directed him to liquidate BCBS' assets.

1. The Appellant was an intervenor in the civil action, since it was a BCBS creditor with an alleged provable claim of $401,391.64.

Interestingly, the West Virginia Hospital Association (hereinafter "WVHA"), of which the Appellant was a member, was also an intervenor in the delinquency proceeding. The record indicates that while WVHA expressly did not represent its members for the purpose of filing claims, the circuit court granted the association the right to receive notice of and participate in significant events of the proceeding. Thus, WVHA participated in the delinquency proceeding, including the claim process, the design of the proof of claim form and the drafting of the Receiver's provisional plan for distribution of BCBS' assets.

2. West Virginia Code § 33-24-27 (1992) provides, in pertinent part, for the classification of claims as follows:

The order of distribution shall be:

(a) Class I. The costs and expenses of administration....

(b) Class II. Debts due to employees for compensation under the provision of section thirty-four [§ 33-24-34] of this article.

(c) Class III. All claims for refund of unearned premiums under nonassessable policies and all claims of policyholders including such claims of the federal or any state or local government for losses incurred and third party claims of an insolvent insurer.

(d) Class IV. Claims of general creditors including claims of ceding and assuming companies in their capacity as such.

(e) Class V. Claims of the federal or any state or local government....

The case is now before the Court upon the appeal of Logan Medical Foundation (hereinafter "Appellant" or "Hospital")[1] from the circuit court's entry of the April 19, 1994, final judgment order, where, as part of the liquidation process, the Appellant's claim against BCBS was classified as a Class VI[2] late-filed claim, for which no distribution is expected due to the fact that the amount of claims properly submitted against BCBS far exceeded BCBS' available assets. The Appellant maintains that the circuit court erred in concluding that the March 5, 1991, letter it sent to the Receiver was not a proof of claim for the purpose of participating in the subject liquidation and distribution.[3] Upon a review of the record, the parties' briefs, and all other matters submitted before this Court, we find that the circuit court was correct in determining that the Appellant's proof of claim was not timely filed and failed to comply with the relevant statutory provisions.[4]

(f) Class VI. Claims filed late or any other claims other than claims under subdivision[ ] (g)....

(g) Class VII. Surplus or contribution notes, or similar obligations and premium refunds on assessable policies.
W.Va.Code § 33-24-27.

3. Specifically, the Appellant argues that the circuit court erred: 1) in finding that the March 5, 1991, filing did not constitute a proof of claim for the purpose of participating in the subject liquidation and distribution; 2) in concluding as a matter of law that the entry of the court's order on April 2, 1991, caused the March 5, 1991, filing to not constitute a proof of claim for the purpose of participating in the subject liquidation and distribution; 3) in not finding that the proof of claim form prepared by the Receiver and sanctioned by the court in its order of April 2, 1991, is, for all intents and purposes, in the same form as the March 5, 1991, letter which was filed by the Hospital; and, 4) in not holding that the Hospital's proof of claim filed on March 5, 1991, if insufficient in any manner, could be amended to cure a defect subsequent to the July 8, 1991, deadline for filing proofs of claims, and was in fact amended by the filing of July 28, 1992. We find that these assignments of error are largely redundant and that resolution of whether the Appellant's March 5, 1991, letter to the Receiver constitutes a proof of claim will answer the Appellant's above-referenced assignments or error.

4. See W.Va.Code § 33-24-25 (1992).

Accordingly, we affirm the lower court's decision.

## I.

In a notice dated January 29, 1991,[5] from the Receiver's special deputy, David A. Gates, to the Appellant, the Receiver listed the Hospital's claims that the Receiver had processed which were subject to the liquidation process. The deputy further advised the Appellant:

> Enclosed is a listing of all claims processed by Blue Cross and Blue Shield of West Virginia, Inc., to date that are subject to the liquidation process. This is not a formal proof of claims. However, this listing may be used to reconcile your records in preparation for the submission of your formal proof of claims. You should recognize that we intend to provide information similar to this listing as support for your formal proof of claims. Any errors detected and/or adjustments necessary should be submitted for processing as usual.... Claims not included on this list that are subject to the liquidation process should be submitted to the attention [of]: Michelle Beihl [the Appellee's agent].

In response to this notice, by letter dated March 5, 1991, the Appellant mailed to Michelle Beihl, an agent of the Receiver, the Appellant's listing of all claims believed to be owed to it by BCBS. The listing included new claims in addition to those attached to the January 29, 1991, notice. Moreover, the Appellant's correspondence and listing of March 5, 1991, stated that the total claim for monies BCBS owed to it amounted to $409,-391.64.[6]

After the Hospital submitted its response to the Receiver, the circuit court, by order entered April 2, 1991, approved the Receiver's liquidation plan. That plan provided:

> Persons seeking to receive distribution in the liquidation as claimants shall file with the Receiver a written Claim. The Claim must be made on the proof of claim Form ("Form") provided by the Receiver, with, at minimum, the following detail included or attached:
>
> (i) the amount of the Claim or the basis upon which such amount can be ascertained;
>
> (ii) the facts upon which the Claim is based;
>
> (iii) the facts upon which a 'secured' or 'special deposit' Claim, as defined in W.Va. Code § 33–24–26 [ (1992) ], if any exists, is asserted;
>
> (iv) the classification for 'priority of distribution,' as defined in W.Va.Code § 33–24–27 [ (1992) ], requested and the facts which support such request; and
>
> (v) be verified by an unsworn declaration under penalty of perjury of the claimant, or someone authorized to act on his behalf and having knowledge of the facts; and,
>
> (vi) be supported by such documents as may be material thereto.

Further, the April 2, 1991, order set April 8, 1991, as "the date upon which notice of the filing of a Proof of Claims will be given[,]" and established July 8, 1991, as the final date for filing a proof of claim.

In compliance with the April 2, 1991, order, the Receiver mailed two proof of claim forms to the Hospital on or about April 8, 1991.[7] Moreover, the circuit court found that

---

5. To place the Appellant's receipt of this notice in context, according to the Appellee, said notice was precipitated subsequent to the entry of the above-mentioned liquidation order due to the fact that BCBS had more than 50,000 policyholders, each potentially having claims against BCBS in liquidation, as well as approximately 300,000 claims in process when the liquidation proceeding began. Consequently, in January 1991, the Receiver decided it was necessary to test the accuracy of the data contained in BCBS' computer system by selecting a sample of the largest BCBS participating health care providers and sending each a list of its BCBS claims in

process, as reflected by that data. The Appellant was included in this sample and, therefore, received the January 29, 1991, notice discussed *supra* in the text.

6. It is undisputed that the Receiver lost the Hospital's March 5, 1991, response. However, the Receiver does not dispute that this letter was indeed sent and received by him or one of his agents.

7. The Receiver's mailing list was recognized by the referee at the Hospital's hearing on September 23, 1993, as a business record, and admitted

notice was properly given of the requirement to file a prescribed proof of claim form, said notice being published in *The Charleston Gazette*.[8] Despite the Receiver having given the proper notice to the Appellant, according to the April 19, 1994, circuit court order, the Appellant admitted that it did not timely file a proof of claim on the prescribed form.

On June 22, 1992, the Receiver mistakenly sent a notice of determination to each claimant, advising the claimant of the Receiver's classification of the claims presented in compliance with an order entered June 16, 1992. The Appellant's notice of determination letter for its claim stated that the claim had been classified as a Class VI claim.[9] After the Appellant's counsel contacted the Receiver regarding the notice of determination letter, Robert Greer, the Assistant Deputy Receiver, by an undated letter, requested that the Appellant disregard the notice of deter-

mination because it had not filed a proof of claim. Additionally, the Deputy Receiver enclosed a proof of claim form for the Appellant to complete if it so desired with the following caveat: "However, if returned, your claim will not be considered a timely returned Proof of Claim." The Appellant's completed proof of claim form was submitted to the Receiver on July 28, 1992, but in a letter accompanying the form, the Appellant objected to the Receiver's determination regarding the Appellant's claim because "the information provided in the hospital's letter of March 5, 1991, should suffice to be considered a timely filing of the hospital's proof of claim."

By letter dated August 11, 1992, the Deputy Receiver informed the Appellant that it had received the proof of claim; however, "[o]ur records reflect that you have a late filed Proof of Claim. Late filed claims are in Priority Class VI.... Unfortunately, it is

---

in evidence. The list indicated that a proof of claim form was mailed to both Logan General Hospital and the Logan Medical Foundation at their respective correct addresses. While the Appellant denied ever receiving a proof of claim form, the circuit court found in its April 19, 1994, order that:

> The evidence presented by the claimant was insufficient to rebut the ... [Receiver's] assertion and supporting business records and testimony entered as evidence at the hearing that two Proof of Claim Forms were timely provided to the claimant having been mailed to claimant from the West Virginia Office of the Receiver, Charleston, West Virginia as required by the order approving the Plan of Liquidation.

As we have previously indicated in *National Grange Mutual Insurance Co. v. Wyoming County Insurance Agency, Inc.*, 156 W.Va. 521, 195 S.E.2d 151 (1973), evidence that a notice was mailed creates an evidentiary presumption of receipt. *Id.* at 527, 195 S.E.2d at 155.

8. West Virginia Code § 33–24–37(a) (1992) provides that the notice of time within which claims are to be filed "shall be given in a manner to be determined by the court." *Id.* Consequently, the liquidation plan, which was approved by the April 2, 1991, order of the circuit court, provided that:

> a. Notice
> The Receiver shall give or cause to be given notice of the method of filing Claims pursuant to this Order, as follows:
> (1) by notice in a newspaper of general circulation in a majority of counties in the state;

> (2) by notice in a newspaper in such other locations as may be necessary;
> (3) by mailing to known claimants, as determined by a reasonable review of the records of BCBS; and,
> (4) in such additional formats as the Receiver deems appropriate.

9. The following opening statement made by Robert Greer, the Assistant Deputy Receiver, at the Appellant's September 23, 1993, hearing before a referee is the only explanation in the record as to why the Receiver's notice of determination classified the Appellant's claim as a late-filed claim, when, at the time the notice was sent, the Appellant had not filed an official proof of claim form:

> The claim of Logan General Hospital comes on for hearing today based on a Notice of Determination that was sent on June 22[], 1992, which adjudicated their claim to be Class VI. That Notice of Determination was sent without benefit of having received a proof of claim form. The record, I believe, will show that it was the Liquidator's position that Logan General just happened to be one of the test claimants that was placed into the system during testing, and those tests were placed in the mail....
>  ....
> ... The test showed that they were a Class VI claimant, which is what they would have been had they filed a proof of claim form at any time after this [June 22, 1992,] communication.

Other than the June 22, 1992, letter being introduced in evidence as an exhibit, there was no other evidence presented by either party as to why this notice of determination was erroneously made.

not anticipated that any distribution will be made to claims which were not timely filed."

The Appellant requested a hearing with regard to the Receiver's determination, and said hearing was conducted before a referee on September 23, 1993. The referee found that the Appellant first filed a proof of claim after the claims bar date. The circuit court upheld this finding and approved the Appellant's proof of claim in the amount of $409,391.64, assigning said claim Class VI priority. It is this ruling which forms the basis of the present appeal.

## II.

The only issue before the Court is whether the Appellant's March 5, 1991, letter to the Receiver constituted a proof of claim for the purpose of participating in the subject liquidation and distribution. The Appellant maintains that the mere fact that the March 5, 1991, filing was not the "magical" form drawn up by the Receiver and approved by the circuit court should not render said filing invalid. Moreover, the Appellant maintains that the April 2, 1991, order which sets forth the procedure and deadline for filing a proof of claim is "wholly immaterial" to the resolution of this case. Further, the Appellant asserts that West Virginia Code § 33–24–25 (1992) requires that a proof of claim must be verified by the claimant's affidavit, and that while its letter did not contain any verified affidavit, neither did the proof of claim form sanctioned by the circuit court. Finally, the Appellant argues that the proof of claim it submitted to the Receiver on July 28, 1992, after the filing deadline, amended and cured any procedural defects found in the March 5, 1991, letter. In contrast, the Appellee contends that the Receiver followed claim procedures mandated both by statute and court order in the BCBS liquidation, but the Appellant did not. Additionally, contrary to the Appellant's assertion, the Receiver's proof of claim form meets all statutory requirements. Finally, the Appellee maintains that where the Appellant had notice of the claim procedures and failed to follow them, the circuit court was correct in not considering the Appellant's March 5, 1991, filing, a timely proof of claim. Moreover, because the Appellant

failed to timely file a proof of claim, its late-filed proof of claim could not be considered an amendment.

It is helpful to begin by examining the pertinent statutory framework established for dealing with insolvent health service corporations such as BCBS. When a health service corporation becomes insolvent, West Virginia Code § 33–24–15(a) (1992) vests exclusive original jurisdiction of any delinquency proceedings instituted within the purview of West Virginia Code §§ 33–24–14 to –44 (1992 & Supp.1995) with the circuit courts of this state, and authorizes the circuit courts to "make all necessary and proper orders to carry out the purposes of this article." *See* W.Va.Code § 33–24–15(a). As part of these delinquency proceedings, West Virginia Code § 33–24–25(a) and (b) mandate that

(a) [a]ll claims against a corporation against which delinquency proceedings have begun shall set forth in reasonable detail the amount of the claim, or the basis upon which such amount can be ascertained, the facts upon which the claim is based, and the priorities asserted, if any. All such claims shall be verified by the affidavit of the claimant, or someone authorized to act on his behalf and having knowledge of the facts, and shall be supported by such documents as may be material thereto.

(b) All claims filed in this state shall be filed with the receiver, . . . on or before the last date for filing as specified in this article.

*Id.* "Unless such claim is filed in the manner and within the time provided in section twenty-five [§ 33–24–25], *it shall not be entitled to filing or allowance,* and no action may be maintained thereon." W.Va.Code § 33–24–36(f) (emphasis added). Further, "[n]o claim by a policyholder or other creditor shall be permitted to circumvent the priority classes *through the use of equitable remedies.*" W.Va.Code § 33–24–27 (emphasis added). Finally, West Virginia Code § 33–24–37(a) provides the time within which claims are to be filed and specifically directs the Receiver to give notice of the filing deadline.

In interpreting the above-referenced statutory framework, the Appellant, relying on

the substantial compliance standard utilized in estate, bankruptcy and mechanic's lien cases,[10] argues that a proof of claim need not be in any particular form. We reject the Appellant's argument for two reasons. First, estate, bankruptcy, and mechanic's lien cases are quite different from liquidation proceedings by virtue of the sheer volume of claims involved alone.[11]

▪ The more significant reason for not adopting a substantial compliance standard is that strict compliance with all filing requirements is the rule in insurance insolvency cases. For instance, in *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co. of America*, 194 W.Va. 203, 460 S.E.2d 18 (1994), an analogous case which involved a claim against the West Virginia Insurance Guaranty Association (hereinafter "WVIGA"), we strictly construed the provisions of the WVIGA Act[12] pertaining to the time frame for filing claims in certain insurance insolvencies. 194 W.Va. at 209 n. 4, 460 S.E.2d at 24 n. 4. Relying on West Virginia Code § 33–26–8(1)(a) which mandates that " 'a covered claim shall not include any claim filed with the guaranty fund after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer[,]' " we found that "Cannelton received timely notice of the insolvencies, Cannelton did not become aware of the claims in question until after the expiration of the bar dates for filing proofs of claims ..., [and] [u]nder the language of the statute ... the claims would clearly not have been covered." 194 W.Va. at 209–10 and n. 14, 460

S.E.2d at 24–25 and n. 4 (quoting, in part, W.Va.Code § 33–26–8(1)(a) (1985)).

Similarly, other jurisdictions adhere to the concept of strict compliance where it concerns legislative directives regarding the procedure to be utilized when liquidating an insurance company. In *State ex rel. McReynolds v. United Physicians Insurance Risk Retention Group*, No. 01–A–01–9409–CH00452, 1995 WL 111645 (Tenn.Ct.App. March 15, 1995), the Tennessee Court of Appeals reviewed whether the chancellor erred in upholding the disallowance of a claim by an individual policyholder of an insurance company in liquidation. The receiver had notified the policyholder that they had to file a proof of claim form by a certain date if they had claims against the receivership. Slip op. at 1. The policyholder failed to file the proof of claim by the deadline and, therefore, the receiver denied coverage on a claim. *Id.* The policyholder objected and a special master recommended that his claim be considered timely filed because, "prior to the deadline for filing a proof of claim form, there was already a voluminous file relevant to the ... claim in the possession of the Receiver ... [and, thus, the] file already contained all the information that could have been obtained by completion of the required proof of claim form." *Id.* at 2.

In reversing the special master's decision, the *McReynolds* court noted that

the Legislature has created a comprehensive scheme for the liquidation of insolvent insurance companies. The procedure for filing proofs of claim is an integral part of that scheme, and the controlling statute

---

**10.** *See In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir.1979), *cert. denied sub nom. Grover v. County of Napa*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980) ("The point simply is that 'there must have been presented, within the time limit, by or on behalf of the creditor, some written instrument which brings to the attention of the court the nature and amount of the claim.' "); *In re Stern*, 70 B.R. 472, 476 (E.D.Pa.1987) (stating that "courts have found certain letters ... to constitute proofs of claim...."); *In re Guardian Mortgage Investors*, 15 B.R. 284, 286 (M.D.Fla.1981) (finding that "timely filed ... written instrument" was adequate for proof of claim on estate); *In re Estate of Rule*, 3 Wis.2d 301, 88 N.W.2d 734, 736 (1958) (quoting from Wisconsin legal treatise: " 'No particular form is required for due presentment

of a claim in probate' "); *see also* Fed.R.Bankr.P. 3001(a) (providing that "claim shall conform substantially to the appropriate Official Form....").

**11.** According to the record, 18,264 proofs of claims totalling $51,603,976.10 were filed in the BCBS liquidation.

**12.** The WVIGA Act, West Virginia Code §§ 33–26–1 to –19 (1992), "provide[s] a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." W.Va.Code § 33–26–2.

gives specific instructions for the treatment of late filers.

. . . .

... The proof of claim requirement is meant to impose an organizing principle upon the voluminous files that the Receiver necessarily inherits from the insolvent insurer. Any exemptions from its requirements would tend to undermine its function of providing the Receiver with a single comprehensive form of notice of all the claims that must be satisfied out of the assets of the estate.

*Id.* at 3; *see generally In re Great Falls Ins. Co.*, No. A048715 (Cal.Ct.App. July 18, 1991) (finding that Receiver was correct in strictly construing that no late filing of claim would be permitted where claimant failed to file proof of claim prior to time filing deadline); *Chandler v. Gutierrez*, 906 S.W.2d 195 (Tex. Ct.App.1995) (finding that claims filing deadline in statute must be strictly construed even though such construction penalizes claimants who do not and cannot know of claims by filing deadline which will later be asserted against them).

■ We find persuasive the rationale used by the *McReynolds* court and, accordingly, hold that strict adherence must be given to the express legislative procedures governing the liquidation of health service corporations found in West Virginia Code §§ 33–24–14 to –44. Therefore, pursuant to West Virginia Code § 33–24–36(f), where a proof of claim fails to comport with the requirements mandated by West Virginia Code § 33–24–25, and is not filed in the manner and within the time provided by statute, the claim shall not be entitled to filing or allowance, and no action may be maintained with regard to the claim. However, where a proof of claim complies with the statutory requirements of West Virginia Code § 33–24–25, but is filed after the claims bar date provided for by statute has elapsed, the proof of claim is properly classified as a Class VI late-filed claim as directed by West Virginia Code § 33–24–27(f).

■ Consequently, it is clear that the March 5, 1991, letter submitted by the Appellant to the Receiver failed to comport with not only the requirements of West Virginia Code § 33–24–25, but also the April 2, 1991, order of the circuit court. The letter failed to contain a verified affidavit [13] and to assert a priority. Moreover, the record indicates that the Appellee mailed the Appellant two notices, in addition to a notice which appeared in *The Charleston Gazette*, informing the Appellant that the statutorily-mandated proof of claim form had to be submitted in order for the Hospital's claims to be considered. Unfortunately, even with the proper notice, the Appellant failed to comply with the statutory and court-ordered requirements in submitting its claim until after the time deadline for presenting proofs of claims had passed.[14] If claims are not timely filed despite proper notice, late filing is not excused under the statute. *See* W.Va.Code § 33–24–36(f). Finally, even though the Appellant eventually filed a proper proof of claim, this filing occurred after the claims bar date had past. Thus, the circuit court properly classified the filing as a Class VI late-filed claim. As the Tennessee Court of Appeals noted in *State ex rel. McReynolds v. United Physicians Insurance Risk Retention Group*, No. 01–A–01–9412–CH–00585, 1995 WL 316256 (Tenn.Ct.App. May 25, 1995):

13. The Appellant makes much ado in arguing that the Receiver's court-approved proof of claim form did not require the proof of claim to be *verified by affidavit as required by West Virginia Code § 33–24–25.* However, the record indicates that the Receiver's proof of claim form contains a section entitled "AFFIDAVIT" wherein the claimant or someone authorized to act on his behalf is required to "subscribe[ ] and affirm[ ] as true under the penalties of perjury[,]" that the claim is "justly due and owing." Accordingly, we summarily conclude that this section contained within Receiver's proof of claim

form fulfills the requirement that claims "shall be verified by the affidavit of the claimant, or someone authorized to act on his behalf and having knowledge of the facts . . . ." W.Va.Code § 33–24–25(a).

14. We find the Appellant's assertion that its late-filed July 28, 1992, proof of claim amended or cured any defect in the March 5, 1991, letter without merit. Since the Appellant never properly filed a proof of claim before the filing deadline, there was nothing to amend.

This court derives no satisfaction from denying what might otherwise be a legitimate claim, because of the claimant's failure to conform to the formal requirements of the claims process....

....

[However,] [w]hen a claimant fails to avail himself of the procedures available for his protection, but insists that he is nonetheless entitled to have his claims considered as if he had complied with those procedures, then this court must respectfully reject his contentions.

Slip op. at 3.

Having concluded that no error was committed by the lower court in its classification of the Appellant's claim against BCBS as a Class VI late-filed claim, we affirm the decision of the Circuit Court of Kanawha County.

Affirmed.

ALBRIGHT, J., did not participate.

MILLER, Retired J., sitting by temporary assignment.