589 S.E.2d 216

The WEST VIRGINIA INSURANCE GUARANTY ASSOCIATION, an Unincorporated Legal Entity, Plaintiff Below, Appellee

v.

Marlyn L. POTTS, Alan K. Potts, Stacey Potts, Erin Potts, Kristen Potts, Robert L. Cross, M.D., and Thoracic & Cardiovascular Surgery, Inc., a Corporation, Defendants Below, Appellants.

No. 31033.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 9, 2003.

Filed: Oct. 31, 2003.

Dissenting Opinion of Justice McGraw Dec. 10, 2003.

McGraw, J., dissented and filed opinion.

Cheryl Lynne Connelly, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for the Appellee.

Scott S. Blass, James B. Stoneking, Bordas & Bordas, PLLC, Wheeling, for the Appellants.

PER CURIAM:

This is an appeal by Marlyn L. Potts, Alan N. Potts, Stacey Potts, Erin Potts, and Kristen Potts (hereinafter "Appellants" or "Potts family") from a December 31, 2001, order of the Circuit Court of Ohio County. The underlying civil action, a medical malpractice claim against Dr. Robert Cross and Thoracic and Cardiovascular Surgery, Inc. (hereinafter "medical defendants"), was previously before this Court in *West Virginia Insurance Guaranty Association v. Potts*, 209 W.Va. 682, 550 S.E.2d 660 (2001) (hereinafter "*Potts I*"). The Appellants now contend that the

lower court erroneously applied this Court's reasoning in *Potts I*.

I. Factual and Procedural History

This medical malpractice civil action was initiated by the Appellants against the medical defendants, contending that the medical defendants were liable to Marlyn Potts on theories of negligence, intentional interference with employment relationship, intentional interference with doctor/patient relationship and outrage. The Appellants further contended that the medical defendants were liable to Mrs. Potts' husband, Mr. Alan Potts, and the parties' three children for the derivative claims of loss of society and comfort.

The medical defendants were insured through a policy issued by Insurance Corporation of America (hereinafter "ICA"). Two weeks prior to the scheduled trial date in this matter, a temporary receiver was appointed for ICA. A temporary injunction was entered, and ICA was enjoined from negotiating settlements in pending cases. However, the West Virginia Insurance Guaranty Association (hereinafter "WVIGA")[1] was unable to immediately intervene in the present malpractice action since ICA had not yet been declared insolvent. The medical defendants' request for a continuance was denied.

On April 3, 1997, prior to the conclusion of the trial, a settlement was reached between the Potts family and the medical defendants.[2] Pursuant to that agreement, the medical defendants agreed to pay $400,000.00 to the Appellants regardless of the ultimate conclusion of the jury. In addition, the medical defendants agreed to pay the Appellants the first $150,000.00 of any money collected from the WVIGA.[3] In exchange, the Appellants agreed not to pursue the personal assets of

---

1. In *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co. of America*, 194 W.Va. 203, 460 S.E.2d 18 (1994), this Court explained that the purpose of the West Virginia Insurance Guaranty Association Act "is to provide for the payment of covered claims under certain insurance policies in the event that an insurer becomes insolvent and to aid in the detection and prevention of insurer insolvencies." 194 W.Va. at 206, 460 S.E.2d at 21.

2. The Appellants maintain that the April 3, 1997, settlement was motivated by the fact that the

medical defendants' malpractice insurer, ICA, was in receivership at that time. ICA was declared insolvent and ordered to be liquidated approximately one month after the trial in this matter. WVIGA's statutory obligations were then triggered.

3. The agreement further provided that the proceeds from any bad faith claims would be split with 40% to be paid to counsel, 30% to be paid to the Appellants, and 30% to be paid to the medical defendants.

the medical defendants if the jury returned a verdict in excess of $400,000.00. This settlement agreement was approved by the lower court.

On April 4, 1997, the jury concluded that the medical negligence of Dr. Robert Cross had unnecessarily forced Mrs. Potts to undergo a mastectomy and awarded Mrs. Potts $1,031,137.50 in compensatory damages and $1,000,000.00 in punitive damages. The jury further awarded $10,000.00 to Mr. Alan Potts on his loss of consortium claim and $20,000.00 to each of the three Potts children.

Subsequent to the jury verdict, the WVIGA instituted a declaratory judgment and interpleader action, requesting the lower court to declare that its liability was limited to a single statutory covered claim. The medical defendants answered, seeking distribution of the interpleader fund in accordance with the terms of their settlement agreement with the Appellants. Upon filing the declaratory judgment action, WVIGA made an interpleader deposit of its statutory cap of $300,000.00 in payment of the acknowledged claim. An agreed order was entered on November 22, 1999, through which WVIGA paid $300,000.00 to the medical defendants in return for the dismissal of the medical defendants' claims against the WVIGA. The terms of that agreed order provided that any remaining claims of the Potts family were not affected. That order further dismissed the medical defendants from the civil action with prejudice.

The medical defendants thereafter complied with the terms of the settlement and paid $150,000.00 to the Potts family out of the $300,000.00 they collected from the WVIGA. The WVIGA refused to pay additional claims of the Potts family, and the action proceeded to summary judgment in favor of the WVIGA. The Potts family appealed that determination to this Court in *Potts I.*

On July 3, 2001, this Court issued *Potts I,* finding that each of the five individual members of the Potts family was entitled to a separate claim against the WVIGA. Thus, pursuant to *Potts I,* each of the five compen-sable claims was subject to the statutory per claim limit of $300,000.00.[4] In *Potts I,* this Court remanded the case to the lower court with directions to enter an order consistent with that opinion.

On remand, the WVIGA moved to interplead $70,000.00 into the circuit court, representing payment of the jury verdict of $10,000.00 for Mr. Potts and $20,000.00 for each of the three children. The lower court granted the WVIGA's motion for summary judgment, reasoning that the five claims of the Potts family totaled $370,000.00. The court consequently held that the $300,000.00 distribution previously made by WVIGA to the medical defendants was in partial satisfaction of the Appellants' claims and could be characterized as an offset against further claims by the Appellants. On December 31, 2001, the lower court entered a judgment order consistent with its memorandum opinion and directed the clerk to distribute the $70,000.00 deposited by WVIGA to the Potts family allocated under the jury verdict returned in favor of Mr. Potts ($10,000.00) and each of the three Potts children ($20,000.00 each). The lower court further ordered prejudgment interest to be paid on these funds.

The Appellants now appeal, contending that the lower court erred in concluding that the $300,000.00 paid by the WVIGA should be deemed an offset against any remaining claims. The Appellants contend that despite the fact that the medical defendants paid a settlement of $400,000.00 plus $150,000.00 of the amount received from the WVIGA, the five individual claims held by the Potts family are worth a total of $370,000.00, consisting of the $70,000.00 due Mr. Potts and the three Potts children and an additional $300,000.00 for Mrs. Potts. The WVIGA contends that it already paid the $300,000.00 for Mrs. Potts' portion of the Appellants' claims, distributed at their request and in accordance with their settlement agreement with the medical defendants. Thus, the WVIGA maintains that the lower court properly resolved this matter by requiring payment by the WVIGA of the

---

**4.** *See* West Virginia Code §§ 33–26–1 to 33–26–19 (1970) (Repl. Vol. 2003). Such a claim is further limited by the maximum amount of cov-erage afforded for a claim under the insurance policy issued by the insolvent insurer if that limit is less than *$300,000.00.*

only outstanding claims, those of the husband and three children for a total of $70,000.00.

## II. Standard of Review

■ The Appellants appeal the lower court's summary judgment order. In syllabus point one of *Mountain Lodge Association v. Crum & Forster Indemnity Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001), this Court explained the standard of review applicable to summary judgment orders as follows: " 'A circuit court's entry of summary judgment is reviewed *de novo.*' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." We consequently apply a *de novo* standard of review to the matter presently under evaluation.

## III. Discussion

The purpose of the West Virginia Insurance Guaranty Association Act is expressed in West Virginia Code § 33–26–2 (1970) (Repl. Vol. 2003), as follows:

> The purpose of this article is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policy-holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

West Virginia Code § 33–26–5(4) (1985) (Repl. Vol. 2003) defines a covered claim as follows:

> [A]n unpaid claim ... which arises out of and is within the coverage of an insurance policy to which this article applies and which policy is in force at the time of the occurrence giving rise to such unpaid claims if (a) the insurer issuing the policy becomes an insolvent insurer after the effective date of this article [May 12, 1970] and (b) the claimant or insured is a resident of this state at the time of the insured occurrence, or the property from which the claim arises is permanently located in this state.

With regard to the maximum liability of the WVIGA, West Virginia Code 33–26–8 provides that the WVIGA shall not be obligated beyond a maximum of $300,000.00 for each covered claim.

In *Potts I,* this Court held that the "covered claim" in the case *sub judice* consists of five separate claims asserted by the five members of the Potts family. Specifically, this Court held as follows in syllabus point one of *Potts I:* "The West Virginia Insurance Guaranty Association Act specifically states that the West Virginia Insurance Guaranty Association is obligated to pay covered 'claims' rather than covered 'occurrences.' W.Va.Code § 33–26–8(1)(a) (1985)." 209 W. Va. at 682, 550 S.E.2d at 660. Syllabus point four of *Potts I* explains that all five members of the Potts family maintain separate claims, as follows:

> Loss of consortium claims presented for payment under the West Virginia Insurance Guaranty Association Act, W. Va. Code §§ 33–26–1 to 19, by a medical malpractice victim's spouse and children are separate and distinct covered claims. Each compensable claim is subject to the statutory per claim limit of $300,000 up to the maximum liability of the insurance policy issued by the insolvent insurer.

*Id.* This Court thus reversed the determination of the lower court and remanded the matter for entry of an order consistent with the conclusion that each of the five Potts family members could maintain a separate covered claim for which the WVIGA would be obligated up to the statutory limits. 209 W.Va. at 688, 550 S.E.2d at 666. *Potts I* neither addressed nor resolved the issue of whether the original $300,000.00 paid by the WVIGA should be used as a set-off against any further remaining liability.

■ The current appeal requires this Court to determine the character and ramifications of the original payment by the WVIGA of $300,000.00. The WVIGA asserts that such payment constituted full satisfaction of the $300,000.00 statutory maximum to be paid on Mrs. Potts' individual claim, leaving only her husband and children's claims to be satisfied. On the contrary, Mrs. Potts maintains that she is entitled to $300,000.00, as the statutory maximum from the WVIGA, in addition to the $400,000.00 and $150,000.00

already paid pursuant to the settlement agreement.

■ Mrs. Potts' reasoning disregards one fundamental detail: the WVIGA is obligated to make only one payment of $300,000.00 for Mrs. Potts' individual claim. That payment was made by the WVIGA in the form of indemnification or reimbursement to the medical defendants. Mrs. Potts is only entitled to that one payment of $300,000.00 from the WVIGA whether she receives that payment directly from the WVIGA or through the medical defendants, with later reimbursement of the medical defendants by the WVIGA. Mrs. Potts argues that she is entitled to a direct payment of $300,000.00 *and* that the medical defendants maintain their own separate claim for reimbursement of $300,000.00. That argument is fallacious and possesses no statutory foundation. Such a resolution would result in a total of $600,000.00 paid by the WVIGA on behalf of Mrs. Potts' injury. Either a right of direct action for payment exists [5] or a right of indemnification for payment exists. The exercise of one right operates, in our opinion, to satisfy the other. The WVIGA is obligated only up to $300,000.00 for Mrs. Potts' individual claim. Permitting both a direct action with full satisfaction of the statutory maximum and an indemnification action for the statutory maximum would result in duplication and would be in direct violation of the $300,000.00 limitation set forth in the statute.[6]

We consequently hold that Mrs. Potts received the $300,000.00 which the WVIGA was obligated to pay on her individual claim. The WVIGA payment constitutes a reimbursement or indemnification of the medical defendants for the amount they paid to Mrs. Potts. Mrs. Potts has thereby received the intended benefit of the WVIGA statutory scheme, and she personally is entitled to no further recovery from the WVIGA. The only outstanding claims to be paid by the WVIGA are those of Mr. Potts for $10,000.00 and each of the three Potts children for $20,000.00, for a total of $70,000.00.[7]

Affirmed and remanded with directions.

Justice McGRAW dissents and files a dissenting opinion.

McGRAW, J., dissenting.

(Filed Dec. 10, 2003)

I respectfully dissent from the majority's opinion in this case because I believe it strays significantly from our holding in *West Virginia Ins. Guar. Assoc. v. Potts*, 209 W.Va. 682, 550 S.E.2d 660 (2001) ("*Potts I*"). In *Potts I*, we held that Mrs. Potts, her husband and three children each had separate and compensable claims and that each claim was subject to the $300,000 statutory per claim limit. Though we recognized the medical defendants also had a legitimate compensable claim, which was entitled to payment by West Virginia Insurance Guaranty Association ("Association"), the medical defendants' claim had already been resolved and was not at issue in *Potts I*. Thus, when we held that "[e]ach of the five Potts claimants holds a covered claim for which he or she is entitled to payment from [the Association][,]" *id.*, 209 W.Va. at 688, 550 S.E.2d at 666, our intention was clearly that, upon remand, the circuit court enter an order directing that Mrs. Potts receive $300,000 for her claim (having received a jury verdict in ex-

---

**5.** In syllabus point one of *Broy v. Inland Mutual Insurance Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977), this Court explained that "[i]f an insured with coverage under a liability insurance policy does not pay the underlying judgment entered in a personal injury action, the injured plaintiff may institute a direct action against the insurance company to recover the amount of the judgment up to the limits of the policy."

**6.** The $300,000.00 statutory maximum is loosely analogous to the policy limits of an insurance policy. Once an insurance company has paid the policy limits, as reimbursement to an insured who had advanced such funds to an injured

plaintiff, the plaintiff would not be permitted to maintain a direct action against the insurance company for another payment of the policy limits. It is axiomatic that an insurance company "will be liable only to the extent of its policy limits unless it has failed to exercise the proper care in settling the claim." *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 184, 283 S.E.2d 227, 233 (1981).

**7.** The interest to be attached to such amount shall be determined by the lower court upon remand.

cess of $2,000,000 in compensable and punitive damages), that her husband receive $10,000, and that each of her three children receive $20,000 (the amounts awarded by the jury).

Because, in my view, to allow the $300,000 payment already made by the Association to resolve the medical defendants' claims to apply as a "credit" against the Potts' claims against the Association is contrary to the spirit and intent of our holding in *Potts I,* I respectfully dissent.